[No. 1972]

## THE STATE OF NEVADA, EX REL. EUGENE HOW-ELL, AS BANK EXAMINER, PETITIONER, *v.* FRANK L. WILDES, AS RECEIVER OF STATE BANK AND TRUST COMPANY (A CORPORATION), RESPONDENT.

1. CONSTITUTIONAL LAW—LEGISLATIVE POWER—RIGHTS OF BANK EXAMINER—INTERFERENCE WITH JUDICIARY.

Stats. 1911, c. 150, sec. 79, regulating the affairs of banks and providing that the state bank examiner shall take possession of all banks and their property and accounts in the custody of any receiver previously appointed, and shall administer and settle the same, and all such receivers shall be required to turn over the same to the bank examiner, or a deputy appointed by him, constituted an interference with the duties and prerogatives of the court appointing such receivers and was unconstitutional as violating section 1, article 3, of the constitution, providing that no persons charged with the exercise of powers properly belonging to one department shall exercise any functions appertaining to either of the others, except as expressly directed or permitted.

2. CONSTITUTIONAL LAW—LEGISLATIVE POWER—ENCROACHMENT ON JUDICIARY.

The appointment of a receiver for a bank in involuntary liquidation proceedings, and his investiture of the bank's property for the purpose of liquidation under the orders of the court, constituted a part of the judgment ordering the bank into involuntary liquidation.

ORIGINAL PROCEEDING. *Mandamus* by the State, on the relation of Eugene Howell, as State Bank Examiner, against Frank L. Wildes, as receiver of the State Bank and Trust Company. **Application dismissed.** Petition for rehearing. **Denied.**

The facts sufficiently appear in the opinion.

*Cleveland H. Baker,* Attorney-General, and *James R. Judge,* Deputy Attorney-General, for Petitioner:

The first ground stated wherein the act is claimed to be unconstitutional is that it is, among other reasons, contrary to and in conflict with section 1, article 3, constitution of Nevada, in that it is an encroachment upon the power of the judiciary by conferring upon persons "charged with the exercise of powers properly belonging to the executive department the functions pertaining to

the judicial department, and in that it takes from the judicial department of the state and the courts judicial powers conferred upon them by the constitution, and confers such functions upon the bank commissioners and the bank examiner."

Defendant was appointed receiver of the State Bank and Trust Company by the District Court of the First Judicial District, in and for Ormsby County, Nevada, in the month of May, 1908, in an action then pending in said court by the board of bank commissioners, which said action was commenced for the purpose of enjoining and prohibiting said bank and the directors and trustees thereof from the transaction of any further business, unless it should be found, upon the hearing by said court, that the corporation was solvent and might safely continue business; the court, upon the hearing, found that it was unsafe for said State Bank and Trust Company to carry on a banking business, and that it was insolvent, and by decree ordered said State Bank and Trust Company into involuntary liquidation, issued the injunction applied for, and ordered the examiner to surrender the property of said State Bank and Trust Company to the defendant, who was designated and appointed by the court as receiver of said bank, its property and effects.

The entire proceeding leading up to and under which the defendant was appointed as such receiver, and by virtue of which he has, ever since said appointment, occupied the position and performed the duties and functions of receiver are authorized and provided for in said act of the legislature as above quoted; the conditions which will warrant the bank examiner in taking charge and control of state banks, and the course and procedure requisite and necessary to determine the solvency or insolvency of banks is fully set forth therein; and when determined to be insolvent or unsafe to do a banking business, the acts required to be done by the person whose duty it is to take charge and control of such bank or banks, its, or their property and effects, is fully set forth in said act, and was the subject of careful and

extended consideration by the Supreme Court of the State of Nevada in the case of *Ex Parte Pittman,* 31 Nev. 44, and *State ex rel. Sparks* v. *State Bank and Trust Co.,* 31 Nev. 456.

The objections so taken and urged in argument by counsel upon the hearing were given, as appears from the opinion of the court in the case of *State* v. *State Bank and Trust Company, supra,* thorough investigation and study by the court; every question touching the constitutionality of the law under consideration received the deliberate attention of that body in its opinion, wherein the provisions of section 10 of the act were considered, which provisions are, in many respects, similar to those of section 79 of the act under consideration in the case at bar.

It further appears, from the opinion of the court in the case of *State* v. *State Bank and Trust Company,* that section 10 of the act under investigation before the court was assailed by counsel for appellant upon the grounds that it was unconstitutional and was in conflict with a number of the provisions of that instrument. The objections there urged are, it will be found upon the examination of the record, identical with the grounds urged by defendant in the case at bar against the constitutionality of the act of March 22, 1911, and particularly the provisions of section 79 of said act. The court, in its decision upon the objections urged in support of the reasons why the law there objected to, as here, was unconstitutional and void, decided adversely to petitioner's contentions.

That banking, as a business, is in a clear and well-defined class and so recognized by national and state government, is, we believe, settled beyond doubt or controversy, and that it is the province and within the power of the legislature, not alone to enact what it may deem and consider safe and efficient banking laws for the people of the state, but to change or amend those laws whenever such a course is demanded or deemed desirable by the public who are depositors in, and whose interests are connected with, the banks, and interested in having their money and funds deposited in those banks protected by

wise and efficient legislation, is the well-settled law of
this state, as declared in *Ex Parte Pittman*, 31 Nev. 47.

The authority vested in the examiner under the pro-
visions of the sections above quoted is, we believe, well
within the power of the legislature to grant. Every
state bank doing business in the state at the time the
act became a law, or which has been organized since
that date, is subject to the provisions of these sections.

Every right with which each and every bank doing
business in the state is vested is authorized by the law
under which it is organized and its charter issued; by
the acceptance of its charter and opening its doors for
business under the charter, and having so accepted,
every bank is subject to such changes or amendments
as the legislature may deem advisable in the law relating
to or governing the conduct of banks within the constitu-
tional rights accorded each individual.

There is nothing in the language of the sections above
quoted indicating in any manner wherein the examiner
is vested with arbitrary power in dealing with, or author-
ity over, banks; the examiner is required to be a com-
petent and practical banker, having an accurate, general
knowledge of that class of business; he is, before enter-
ing upon the discharge of the duties of the office, required
to execute and file a bond in the sum of one hundred
thousand dollars, conditioned for the faithful perform-
ance of the duties of his office; the fact that bond in
this amount is exacted from the examiner would indicate
quite clearly, we think, that the legislature had in view
the right of any bank or banks whose rights might or
should be invaded, or whose bank or banking property
might or should improperly, unjustly or improvidently be
taken charge of by the examiner, to apply to the court
for relief in damages against that official; the fact that
the right and authority is given the examiner to inves-
tigate in the manner pointed out in the act the conditions
of the affairs of each state bank, and unless it is found
insolvent or unsafe to permit it to continue business,
either by reason of being insolvent, or its affairs being

mismanaged, the examiner is not authorized, nor is the authority vested in him to interfere with the bank or the conduct of its affairs; that the authority and power given and reposed in the examiner acting in concert with and by the advice of the bank commission, in view of the experience of the public with some of the banks of the state in the past, does not admit of doubt or question, and the right and power of the legislature to enact the law is undoubted.

The Supreme Court of North Dakota, in *North Dakota ex rel. Goodsill* v. *Woodmansee*, 1 N. D. 247, in discussing this question wherein it is held to be a part of the police power of the state, authority therefor being vested in the legislature by the constitution, uses this language: "Morse, in his Treatise on Banking (2d ed. p. 1), uses the following language: 'At common law the right of banking pertains equally to every member of the community. Its free exercise can be restricted only by legislative enactment; but that it legally can be thus restricted has never been questioned. After laws upon the subject have been passed, the business must be undertaken and conducted in strict accordance with all the provisions contained in them. It is not in its nature a corporate franchise, though it may be made such by legislation, and individuals may be prohibited from transacting it, either altogether in all its departments or partially in any of its specified ones. A law which forbids the carrying on of "any kind of banking business" is a total prohibition against each particular department of the business, though conducted singly, and may be infringed equally by exercising any separate one of the various banking functions as by exercising all.' See, also, the following authorities: *People* v. *Barton*, 6 Cow. 290; *People* v. *Insurance Co.*, 15 Johns. 358; *People* v. *Brewster*, 4 Wend. 498; *Pennington* v. *Townsend*, 7 Wend. 276; *Hallett* v. *Harrower*, 33 Barb. 537; *Nance* v. *Hemphill*, 1 Ala. 551; *Austin* v. *State*, 10 Mo. 591. It is clear from these citations that the matter of regulating and prohibiting private banking, and all banking not expressly authorized by

law, is strictly within the legislative discretion, under that branch of the police power relating to the public safety, and that the courts will not interfere and declare such legislation unconstitutional as an evasion of individual rights."

The Supreme Court of the United States had occasion, in a recent decision rendered in the case of *Noble State Bank* v. *Haskell*, 219 U. S. 121, to consider the authority of a legislature under the police power to enact laws regulating banking, and expresses its views in these words: "It may be said in a general way that the police power extends to all the great public needs. (*Camfield* v. *United States*, 167 U. S. 518, 42 L. Ed. 260, 17 Sup. Ct. 864.) It may be put forth in aid of what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare. * * * The question that we have decided is not much helped by propounding the further one, whether the right to engage in banking is or can be made a franchise. But as the latter question has some bearing on the former, and as it will have to be considered in the following cases, if not here, we will dispose of it now. It is not answered by citing authorities for the existence of the right at common law. There are many things that a man might do at common law that the states may forbid. He might embezzle until a statute cut down his liberty. We cannot say that the public interests to which we have adverted, and others, are not sufficient to warrant the state in taking the whole business of banking under its control. On the contrary, we are of the opinion that it may go on from regulation to prohibition except upon such conditions as it may prescribe. In short, when the Oklahoma legislature declares by implication that free banking is a public danger, and that incorporation, inspection, and the above-described operation are necessary safeguards, this court certainly cannot say that it is wrong. (*State ex rel. Goodsill* v. *Woodmansee*, 1 N. D. 246, 11 L. R. A. 420, 46 N. W. 970; *Brady* v. *Mattern*, 125 Iowa, 158, 106 Am. St. Rep. 291,

100 N. W. 358; *Weed* v. *Bergh,* 141 Wis. 569, 25 L. R. A. (N. S.) 1217, 124 N. W. 664; *Com.* v. *Vrooman,* 164 Pa. 306, 25 L. R. A. 250, 44 Am. St. Rep. 603, 30 Atl. 217; *Myers* v. *Irwin,* 2 Serg. & R. 368; *Myers* v. *Manhattan Bank,* 20 Ohio, 283, 302; *Atty.-Gen.* v. *Utica Ins. Co.,* 2 Johns. Ch. 371, 377.) Some further details might be mentioned, but we deem them unnecessary. Of course, objections under the state constitution are not open here."

The question suggested by the court on oral argument is "as to whether the act of the legislature can give the bank examiner absolute power to allow claims and charges and declare dividends without any judicial supervision or right of application or appeal to the courts by depositors, stockholders or claimants, and whether this would confer final judicial powers on the examiner and be a denial of due process of law to parties interested, or in conflict with the provisions of the constitution, specifying the cases in which the district court has jurisdiction and in which appeals may be taken to the supreme court."

It was not, we believe, the purpose or intention of the legislature in passing the act under consideration, to confer upon the bank examiner absolute and exclusive power to "allow claims and charges and declare dividends," but was intended to grant him that authority in the first instance, subject to review by the courts, at the instance of any interested party who had just cause, by reason of the action or nonaction of the examiner, to resort to the courts in defense of his rights or interests; this we take to be the fair and only just construction that can be placed upon the language of the act, and such, we confidently believe, will be the conclusion at which the court will arrive upon consideration of the questions involved.

*Mack, Green, Brown & Heer,* for Respondent:

The state banking act of 1911, and especially section 79 thereof, is contrary to section 17, article 4, of the constitution of the State of Nevada, in that said act embraces more than one subject and more than one matter that is properly connected with the subject

expressed in the title, and in that the title to said act does not express all of the subjects embraced in said act, and especially the subjects embraced in said section 79.

Section 17, article 4, of the constitution: "Each law enacted by the legislature shall embrace but one subject, and matter properly connected therewith, which subject shall be briefly expressed in the title."

The title of the act is: "An act to regulate banking and other matters relating thereto." "Other matters relating thereto" may mean relating to the regulation of banking or relating to banking.

Section 79 relates neither to the regulation of banks nor to banking. The "banks" mentioned in said section are not banks at all, nor are they individuals, partnerships, associations or corporations doing a banking business as defined in the law.

The State Bank and Trust Company long since ceased to do a banking business or to be a bank. By the judgment and decree referred to in defendant's answer, its officers and directors were enjoined from doing any further business. It is an insolvent corporation in the process of liquidation. In effect the decree dissolved the corporation, since it permanently enjoined the doing of further business by it and ordered that its affairs be liquidated by the receiver under the direction of the court.

In no sense can the provisions of section 79 be said to regulate or to relate to banking, or to be matter properly connected either with the regulation of banks or banking. It directs a method of continuing the liquidation of certain insolvent corporations, which have long since ceased to do anything in the nature of banking. It regulates the practice and procedure in pending cases in courts. It divests courts of jurisdiction in cases now pending.

No one reading the title of the act could, by the stretch of any reasonable imagination, infer that the act would contain subjects embraced in section 79.

Under the principles heretofore enunciated in the decisions of courts of this and other states, the matters con-

tained in section 79 are not matters properly connected with the subject of the act, and said section is therefore unconstitutional and void. (*State* v. *Silver,* 9 Nev. 227; *State* v. *Hallock,* 19 Nev. 384; *State* v. *Hoadley,* 20 Nev. 317; *State* v. *Commissioners,* 22 Nev. 399; *Bell* v. *District Court,* 28 Nev. 280; *State* v. *Gibson,* 30 Nev. 350; *Brooks* v. *Hydron,* 42 N. W. 1122.)

The constitutional provision is mandatory. (*Bell* v. *District Court, supra; State* v. *Stone,* 24 Nev. 308; *State* v. *Tufly,* 19 Nev. 393.)

Said act, and especially section 79 thereof, is contrary to sections 20 and 21 of article 4 of the constitution of Nevada. Section 79 undoubtedly regulates practice in the courts of justice. It provides for the disposition of assets now in the custody of courts. It regulates the conduct of officers appointed by courts. It requires such officers to file reports with the courts. It requires the courts to make orders discharging their officers. It provides for the continuance of suits now pending in courts. It provides for a substitution of parties in suits now pending in the courts. It provides for the dismissal of suits now pending. It in effect vacates or modifies decrees heretofore made by the courts and divests courts of their jurisdiction to enforce such decrees.

Practice is defined by Bouvier as "the form, manner and order of conducting and carrying on suits or prosecutions in the courts, through their various stages, according to the principles of law and the rules laid down by the respective courts"; by Burrill as "the course of procedure in the courts which in a general sense includes pleadings"; in Anderson's law dictionary as "the mode of proceeding by which a legal right is enforced as distinguished from the law, which gives or declares the right."

It means "those legal rules which direct the course of procedure to bring parties into courts, and the course of the court after they are brought in." (*Kring* v. *Missouri,* 107 U. S. 221, 27 L. Ed. 506.)

It is a special law regulating such practice. It applies only to one sort of receiverships—where receivers have

been appointed for "banks." There can be no reason or necessity for making a classification between receiverships in suits pending, where the court is administering and liquidating an insolvent banking association or corporation, and receiverships in suits pending where the court is administering and liquidating other insolvent associations or corporations.

When the banking business ceases, the necessity for classification ceases. There is no longer a banking business in which the public, as a public, is interested. There is only a debtor corporation, its shareholders and creditors. There are debts to be paid and assets to be distributed in the case of every insolvent corporation.

This section refers only to receiverships now existing. It does not include receiverships of banks which may hereafter exist.

This act for the regulation of banking will not prevent the appointment of receivers for banking institutions in the future. It adopts as a part of the act all the provisions of the general incorporation law of 1903, which are not in conflict with this act. Conditions may arise with banking corporations where receivers would be authorized under the incorporation act of 1903 (section 94), and where the bank examiner would not be authorized to take possession of such banks. And the bank examiner may not always take possession of banks in cases where he would be authorized to do so under the provisions of this act, in which cases there can be no reason why receivers should not be appointed under the provisions of the incorporation law of 1903, or some other law. And there may be cases where receivers of banks may be appointed under the inherent jurisdiction of courts of equity.

The petition in the matter at bar shows that there are four pending receiverships of banks. They are named in that petition. They might as well have been named in the act. The cases upon which this section can operate are fixed and certain. It is therefore special. (*State v. Boyd,* 19 Nev. 43; *State* v. *Donovan,* 20 Nev. 75.)

In the following cases special laws regulating the practice in courts of justice were held unconstitutional: *People* v. *C. P. R. R. Co.*, 83 Cal. 393; *Cullen* v. *Glendora Water Co.*, 113 Cal. 503; *City of Tulare* v. *Hevren*, 126 Cal. 226; *Strong* v. *Digman*, 207 Ill. 385, 69 N. E. 909; *Board of Commissioners* v. *First Nat. Bank*, 40 Pac. 894; *Bear Lake* v. *Budge*, 75 Pac. 614; *Dawson* v. *Eustace*, 36 N. E. 87; *Jones* v. *Chicago R. I. & P. Co.*, 83 N. E. 215.)

In order to preserve the uniformity enjoined by the constitution, classification, if made, must be based upon reasonable and actual differences; the legislation must be appropriate to the classification and embrace all within the class. (*State* v. *Boyd*, 19 Nev. 43; *Vulcanite Portland Cement Co.* v. *Allison Co.*, 69 Atl. 855.)

As to the subjects enumerated in section 20 of article 4 the constitutional prohibition is absolute. (*Williams* v. *Bidleman*, 7 Nev. 68; *State* v. *Boyd, supra; Schweiss* v. *District Court*, 23 Nev. 226; *Knopf* v. *People*, 185 Ill. 20; *State* v. *Des Moines*, 96 Iowa, 521; *Wolf* v. *Humboldt County*, 32 Nev. 174.)

Said act impairs the obligation of contracts, and so is contrary to section 10 of article 1 of the constitution of the United States, and also to section 15, article 1, of the constitution of the State of Nevada.

The obligation of a contract in the constitutional sense is the means provided by law by which it can be enforced, by which the parties can be obliged to perform it. Whatever legislation lessens the efficacy of these means impairs the obligation. If it tend to postpone or retard the enforcement of the contract, the obligation of the law is to that extent weakened and impaired.

Section 79 of said act, which takes away from the courts the liquidation of banking corporations now in process of liquidation and which places such liquidation in the hands of the state bank examiner and state banking board, authorizes those officers, without the control or supervision of the courts, to lessen the assets by allowing claims against them and by charging them with the expenses of

liquidation, lessens the efficacy and seriously interferes with the enforcement of the contracts of the creditors of the banks, and so impairs their contracts. (*Green* v. *Biddle*, 8 Wheat. 1; *Bronson* v. *Kinsie*, 1 How. 311; *Curran* v. *State of Arkansas*, 15 How. 304; *Byrne* v. *Hartford Ins. Co.*, 96 U. S. 627; *Louisiana* v. *New Orleans*, 102 U. S. 203; *Harrison* v. *Remington Paper Co.*, 140 Fed. 385.)

The said act is contrary to section 1, article 14, of the amendments to the constitution of the United States, in that it denies to this defendant and to said State Bank and Trust Company, and to the shareholders and creditors of said bank, equal protection of the laws.

By "equal protection of the laws" is meant equal security to every one under similar terms, in his life, his liberty and his property. (8 Cyc. 1059; 3 Words and Phrases, 2423; *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540.)

Under this amendment no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place and under like conditions. (*Missouri* v. *Lewis*, 101 U. S. 22, 31.)

All persons "shall have like access to the courts of the country for the protection of their persons and property, the prevention and redress of wrongs and the enforcement of contracts." (*Barbier* v. *Connolly*, 113 U. S. 27, 31.)

In taking away from insolvent banks and banking corporations which have been adjudged insolvent, and ordered by courts into insolvent liquidation, and from their shareholders and depositors, the right to have that liquidation effected by receivers appointed by and under the control of the courts when such right is left to other insolvent corporations which have been placed in the hands of receivers, and to their creditors and directors, the bank act, and especially section 79, denies the equal protection of the laws.

There is no reason for distinction between insolvent banking corporations in the hands of receivers and other insolvent corporations in receivers' hands. The classification here made is unreasonable, not based upon real

differences in circumstances and conditions. It cannot be justified under "police powers." When the courts appointed the receivers and took into their control the liquidation of the assets and enjoined the officers and directors from doing further business, the necessity for the exercise of the police power of the state ended.

All sections of the act providing for the liquidation of banks in the future by the bank examiner and banking board, since they do not provide for the control and supervision of the courts, are also in violation of this section of the fourteenth amendment, though, with regard to banks and banking corporations which may hereafter be liquidated, only those which the examiner determines to liquidate are denied the right to have such liquidation under the direct protection and control of the courts.

A corporation is a person within the meaning of the fourteenth amendment. (*Gulf R. Co.* v. *Ellis*, 165 U. S. 150; 8 Cyc. 1058.)

The said act, and especially sections 79, 53, 54, 56, 57, 58, 59, 60, and 61, are in conflict with section 8, article 1, of the constitution of the State of Nevada, and section 1, article 14, of the amendments to the constitution of the United States, in that they deprive persons of property without due process of law, and deprive this defendant and said State Bank and Trust Company and its shareholders and creditors of property without due process of law.

"Due process of law" is defined in Cooley's Const. Lim., 6th ed. 429, and *Wright* v. *Cradlebaugh*, 3 Nev. 341.

Under the bank act of 1907 and the decree of the district court, the State Bank and Trust Company was in effect dissolved. (*American Nat. Bank of Denver* v. *Nat. Benefit and Casualty Co.*, 70 Fed. 420.)

The decree entered was a final decree and by it the defendant was appointed receiver to execute and enforce such decree; he is therefore called a permanent receiver. (Alderson on Receivers, p. 4.)

The title to the property and assets by the decree

vested in the receiver.   (Alderson on Receivers, p. 212.) It vested it in him in trust for the creditors and shareholders to be held by him and disposed of under order and decree of the court for their benefit.   (*Burleigh* v. *Keck*, 84 Ill. App. 607.)

By the judgment and decree each creditor and shareholder acquired a vested right that the property and assets be administered by the court's receiver under direction of the court.   This right is a valuable one—a property right.   The attempted transfer of the property and assets to the bank examiner, to be administered without the direction of the court, is a legislative sentence which deprives said creditors and shareholders of their property without due process of law.   For an analogous case, see *People* v. *O'Brien*, 111 N. Y. 1.

The method provided by this act for the liquidation of banks is all without due process of law.   The bank examiner without notice may take permanent possession of the bank and its assets, upon his own determination and without the judgment of any court.   This is not due process of law.   (*Golden* v. *District Court*, 31 Nev. 250; *Hettel* v. *District Court*, 30 Nev. 382.)

Nor does the provision of section 60, permitting a banker or banking corporation to bring a suit against the examiner to enjoin further proceedings, supply the requirements of due process of law.   (*People ex rel. Kern* v. *Chase*, 165 Ill. 527; *State ex rel. Monnett* v. *Guilbert*, 38 L. R. A. 519.)

While section 79 provides that pending suits in which the receivers are parties may be continued with the substitution of the bank examiner as a party in place of the receiver, no provision is made for petitions in intervention which have been filed in the receivership cases.   The court, by losing custody of the property and assets which have been in the receiver's hands, loses jurisdiction of such intervening petitions, as it no longer has control of the subject-matter of such petitions and would have no means of enforcing any orders which it might make upon the hearing of such petitions.

The petitioners, it is true, might bring action against the bank examiner, but in a number of cases where petitions have been filed the statute of limitations has now run against the commencement of actions involving the property which is the subject of such petitions. By effecting the discontinuing of such petitions in intervention, said section 79 deprives the petitioners of their property without due process of law.

The said act, and especially sections 79, 53, 54, 56, 57, 58, 59, 60, and 61, are in conflict with section 1 of article 3, section 1 of article 6, and section 6 of article 6 of the state constitution, said act and said sections being legislative encroachment upon, and usurpation of, the powers of the judicial department of the government of the state.

Section 79 attempts to vacate, alter, or modify the final judgment of a constitutional court.

The decree in *State ex rel. Sparks* v. *State Bank and Trust Company*, by which the receiver was appointed, was a final decree finally determining the rights of the parties to the action, declaring the corporation insolvent, enjoining its officers and directors from doing further business, ordering the corporation into involuntary liquidation, and the receiver was appointed for the purpose of enforcing the decree. Although the receivership proceedings are still pending in the district court for the purpose of enforcing the decree of liquidation, that does not change the character of the decree as final. (*Chi. Life Ins. Co.* v. *Auditor*, 100 Ill. 478, 483; *Martin* v. *South Salem Land Co.*, 26 S. E. 591.)

The jurisdiction of the court over a controversy, once acquired, continues until its judgment is satisfied. (*Phelps* v. *Mutual Association*, 112 Fed. 453, 458; *Riggs* v. *Johnson Co.*, 6 Wall. 166; *Railroad Company* v. *Vinet*, 132 U. S. 478.)

Any vacation, alteration, or modification of a judgment of any court, or any change of the rights of parties thereunder by act of legislature, is an unconstitutional infringement upon the judicial power. (*Ex Parte Darling*, 16 Nev. 98; *Skinner* v. *Holt*, 69 N. W. 595; *Butler* v.

*Supervisors,* 26 Mich. 22, 27; *Radcliffe* v. *Anderson,* 31 Gratt. 105; *Gaines* v. *Gaines' Executors,* 9 B. Mon. 295; *Roche* v. *Waters,* 72 Md. 264.)

"The legislature, within certain limitations, may alter and control remedies by which litigants assert their rights in the courts; but when the litigation has proceeded to judgment or decree upon the merits of the controversy, it has passed beyond its power." (*Martin* v. *South Salem Land Co., supra.*)

Liquidation by the receiver appointed by the court was a part of the final judgment. The attempt to take the liquidation from out of the control of the court and vest it in the bank examiner is a modification or alteration of such judgment.

The attempted substitution of parties in cases pending is an attempted exercise of judicial functions, and therefore void. (*Officer* v. *Young,* 5 Yerg. 320.)

The attempted discharge and removal of the receiver appointed by the court is a usurpation of judicial power. Where a court has the power to appoint an officer, it, only, has the power to remove. (*In re Janitor,* 35 Wis. 410, 417, 419.)

If it be claimed that section 79 only substitutes the bank examiner for the receiver and that the liquidation proceeds under the control of the court, such attempted substitution is an encroachment upon the judiciary, as courts have inherent power to appoint their own assistants, including receivers. (*State ex rel. Hovey* v. *Noble,* 118 Ind. 350.)

We contend, however, that the section contemplates settlement and liquidation of the affairs of the insolvent State Bank and Trust Company independent of control of the court, except in the matter of sales of personal and real property.

Section 79 provides that the bank examiner shall administer, liquidate and settle "as in this act provided." For the methods of administration, liquidation, etc., we must look to sections 53 to 61, inclusive, of the act. These sections confer judicial power upon the bank examiner and

are therefore in conflict with the constitutional provisions of this state cited in the statement of this last point.

"The exercise of a judicial function is the doing of something in the nature of the action of a court." (*State v. Washoe County Commissioners*, 23 Nev. 247, 249; *Bridge Street Road Co. v. Hogadone*, 114 N. W. 917, 923.)

Wherever a legislative act undertakes to determine a question of right or obligation, or of property, as the foundation upon which it proceeds, such act is to that extent a judicial one, and wherever authority is conferred upon a person to determine a question of right or obligation or property, as the foundation upon which such person or officer proceeds, such act is the conferring of judicial power. (*Wulzen v. Board of Supervisors*, 101 Cal. 15, 24; *State v. Hampton*, 13 Nev. 439; *Lane v. Dorman*, 3 Scan. 238; *Flint Plank Road Co. v. Woodhull*, 25 Mich. 100; *Lincoln v. Alexander*, 52 Cal. 482; *Corbett v. Widber*, 123 Cal. 154.)

Section 53 of the act authorizes the examiner to determine when he shall take possession of a bank and subject it to the process of liquidation. He is made the judge both of the facts and the law and executes his own sentence of forfeiture.

This power is entirely different from that conferred by the bank act of 1907 as interpreted by this court in *State v. State Bank and Trust Co.*, 31 Nev. 456. Under the act of 1907, the seizure by the bank examiner was a temporary sequestration of the property in the nature of an attachment until a court could determine whether or not the bank should be restrained from doing further business and its affairs wound up.

Section 60 does not change the judicial character of the power given to the examiner by section 53. (*People ex rel. Kern v. Chase*, 165 Ill. 527; *State ex rel. Monnett v. Guilbert*, 38 L. R. A. 519.)

In allowing claims, declaring dividends, selling or compounding debts which he deems to be bad or doubtful, all independently of the control of the courts, the bank examiner exercises judicial functions.

The exception specified in section 54, namely, that he may sell all the real and personal property upon order of the district court on such terms as the court may direct, shows the legislative intent that he may exercise all the other powers granted him without application to the court and without the supervision of the court.

The claims allowed by him rank on an equal footing with judgments.  (Section 56.)

He may pay the same out of the funds in his hands. (Section 59.)

A statute attempting to confer judicial functions or power upon a person or officer not authorized by the constitution to exercise judicial power is void.  (*State ex rel. Hovey* v. *Noble, supra; People* v. *Hayne,* 83 Cal. 111, 119; *People ex rel. Kern* v. *Chase, supra; State ex rel. Monnett* v. *Guilbert, supra; Risser* v. *Hoyt,* 18 N. W. 611; *Attorney-General* v. *McDonald,* 3 Wis. 805; *People* v. *Maynard,* 14 Ill. 419; *Pappen* v. *Holmes,* 44 Ill. 360; *Willis* v. *Legris,* 45 Ill. 289; *Van Slyke* v. *Trempealeau Ins. Co.,* 39 Wis. 390; *Dupree* v. *State,* 119 S. W. 301, 308; *Bridge Street Co.* v. *Hogadone,* 114 N. W. 917; *State* v. *Ryan,* 81 S. W. 435; *In re Cleveland,* 17 Atl. 772; *Appeal of Norwalk Street Ry. Co.,* 37 Atl. 1080.)

Courts have never hesitated to resent encroachment upon the independence of the judiciary, whatever form such encroachment may take.  (*Board of Commissioners* v. *Stout,* 22 L. R. A. 398; *State* v. *Davis,* 26 Nev. 373.)

The peremptory writ should be denied, the alternative writ dismissed, and the defendant have judgment against relator for his costs.

*Van Dyke, Smith & Danforth, Cheney, Downer, Price & Hawkins,* and *W. A. Massey, amici curiæ.*

By the Court, NORCROSS, J.:

This is an original proceeding in *mandamus* brought by the state, upon the relation of the state bank examiner, to compel the respondent, Frank L. Wildes, as receiver of the State Bank and Trust Company, to deliver and surren-

der to the relator, as state bank examiner, the custody, possession, and control of the State Bank and Trust Company, and all other property and accounts of whatever kind and nature which he now has in his custody, possession, or control as such receiver of said State Bank and Trust Company. The application for the writ is based upon the provisions of section 79 of an act entitled "An act to regulate banking and other matters relating thereto," approved March 22, 1911 (Stats. 1911, p. 291), which section reads:

"SEC. 79. Within ten days after the approval of this act the bank examiner shall take possession of all banks and their property and accounts of whatsoever kind and nature which may now be in the custody or possession or control of any receiver or receivers heretofore appointed under the laws of this state; and said bank examiner shall thereupon proceed to administer, liquidate and settle the same as in this act provided, in so far as is necessary to complete the settlement and liquidation of the assets, business and affairs of such banks. And it is hereby made the duty of all such receivers, their agents, employees and representatives to turn over and deliver to said bank examiner, or deputy examiner appointed by him, all real and personal property, accounts, moneys, evidences of indebtedness and securities therefor, books and things of every description belonging to such bank or banks, or relating to their business, together with the possession and custody thereof; *provided*, that the bank examiner shall permit any such receiver to inspect such books, papers and other memoranda, or the property and things so turned over and delivered to said bank examiner, for the purpose of preparing his final accounts; and it is hereby made the duty of all receivers of banks now holding office under appointment by any court in this state, within sixty days after the approval of this act, to file with the clerks of the respective courts from which the respective appointments of said receivers issued, a full and complete statement and accounting of all their acts, receipts and disbursements, with proper vouchers, of their

respective receiverships, and receive their discharges from such courts when such final accounts are duly accepted and approved by said courts. And such receivers shall also deliver to the bank examiner a true and correct copy of said statement and accounting so made to the court, together with a full and complete statement of all debtors and creditors of such respective banks and receiverships, with the amount due from or to each of such debtors or creditors; and the terms and conditions of such indebtedness; *provided, also,* that no suit, action or proceeding which may have been begun by such receiver or receivers, or in which he or they is or are a party or parties, and no right of action which may have accrued to him or them, shall be avoided or rendered ineffectual by anything herein contained, or done pursuant hereto; but such suits, actions, proceedings and rights of action may be carried on and continued and shall inure to such bank examiner for the use and benefit of such respective trusts, as fully and effectually as if such receiver or receivers had continued as such; and the bank examiner shall not dismiss any such action, suit or other proceeding except on the order and approval of the state banking board. And the said bank examiner shall be substituted for any such receiver or receivers in any such action or proceeding now pending in which any such receiver or receivers is or are a party or parties. All attorneys, agents, clerks and assistants now in the employ or acting for and in behalf of any such receiver or receivers shall continue to act in the same capacity, and on the same terms and conditions, until such time as the bank examiner and state banking board shall otherwise provide. All contracts and agreements heretofore entered into by any such receiver duly authorized by the courts by which such receiver was appointed, shall be equally binding on said bank examiner for the use and benefit of such trust, and the bank examiner shall be deemed to be substituted for such receiver in all such contracts and agreements. For the purpose of carrying out the provisions of this section, and subject to the approval of the state banking board,

the bank examiner shall appoint such special deputies, clerks, assistants and attorneys as shall be deemed necessary, and fix their compensation, same to be paid out of the funds and assets of the said respective trusts for the settlement and liquidation of which such special deputies, clerks, assistants and attorneys are appointed or employed."

The respondent, Frank L. Wildes, as receiver of the said State Bank and Trust Company, came into possession of the said bank, and all other property thereof, under and by virtue of a judgment and decree of the First Judicial District Court of the State of Nevada, in and for Ormsby County, made on the 18th day of May, 1908, in an action brought by the State of Nevada, on the relation of the board of state bank commissioners, against the State Bank and Trust Company and the directors thereof, wherein it was adjudged that it was unsafe for the said State Bank and Trust Company to continue business, and ordered said company into involuntary liquidation, enjoined the directors of said company from transacting any of its business affairs, appointing the respondent receiver of said company, and directing the then bank examiner to deliver and surrender to said receiver all the property and effects of said defendant corporation.

The judgment and decree ordering the State Bank and Trust Company into involuntary liquidation and appointing the respondent herein as receiver was made under and by virtue of the provisions of section 10 of an act entitled "An act creating a board of bank commissioners, defining its duties, providing for the appointment of a bank examiner, prescribing his duties, fixing his compensation, providing penalties for the violation of the provisions of this act, and other matters relating thereto," approved March 26, 1907 (Stats. 1907, c. 119), which section, in part, reads as follows:

"SEC. 10. If the bank examiner, on the examination of the affairs of any corporation mentioned in section 4 of this act, shall find that any such corporation    *    *    *

is conducting business in an unsafe manner   *   *   *   or
if it shall appear to said examiner that it is unsafe for
any such corporation to continue to transact business, it
shall be the duty of such examiner to immediately report
the condition of such corporation to the bank commis-
sioners; and if the bank commissioners, either from the
report of the bank examiner, or from their own knowl-
edge, decide that it is unsafe for any such corporation to
continue to transact business, they shall authorize the
bank examiner to take such control of such corporation,
and of the property and effects thereof, as may be by
them deemed necessary to prevent waste, or diversion of
the assets, and to hold possession of the same until the
order of court hereinafter mentioned, and it is hereby
made the duty of the attorney-general, upon being noti-
fied by the bank commissioners, to immediately commence
suit in the proper court against such corporation and the
directors and trustees thereof to enjoin and prohibit them
from the transaction of any further business.   If upon
the hearing of the case the court shall find that such cor-
poration is solvent, and may safely continue business, it
may dismiss the action, and order that the corporation
be restored to the possession of the property.   But if the
court shall find that it is unsafe for such corporation to
continue business, or that such corporation is insolvent,
said court shall by its decree order such corporation into
involuntary liquidation, and shall issue the injunction
applied for, and shall cause the same to be served
according to law, and shall order the examiner to sur-
render the property of the corporation in his possession
to a receiver appointed by the court for the purpose of
liquidation in such proceeding, under the orders and
directions of the court.   *   *   *"

That the decree ordering the State Bank and Trust
Company into involuntary liquidation and appointing a
receiver thereof was a final judgment is conceded in this
proceeding.   It was treated as a final judgment by the
parties to the proceeding, an appeal having been taken
to this court by the defendants in the action, upon the

theory that the same was a final judgment, and the judgment affirmed. (*State* v. *State Bank and Trust Co.*, 31 Nev. 456.) See, also, *Chicago Life Ins. Co.* v. *Auditor*, 100 Ill. 478.

The respondent, in his answer, and counsel for respondent, in their brief, have attacked the banking act of 1911 as violative of the constitution, particularly section 79 thereof. It is unnecessary to consider many of the constitutional questions raised, and it would not be proper to do so, in the event any of the objections made to section 79 can be well taken. We think it unnecessary to go further than to consider the objection that the legislature is without power to modify or annul the final judgment of a court. By section 1 of article 6 of the constitution, the judicial power of the state is vested in a supreme court, district courts, justices of the peace, and such other courts as the legislature may establish for municipal purposes only in incorporated cities and towns, and by section 1 of article 3 it is provided: "The powers of the government of the State of Nevada shall be divided into three separate departments—the legislative, the executive, and the judicial; and no persons charged with the exercise of powers properly belonging to one of these departments shall exercise any functions appertaining to either of the others, except in the cases herein expressly directed or permitted."

By the judgment entered in the case of *The State* v. *State Bank and Trust Company, et al.*, all of the property and interests of the bank were placed in the hands of the receiver, for the purpose of liquidation in such proceeding, under the orders and directions of the court. (Section 10, Stats. 1907, p. 232.)

The appointment of the receiver and his investiture of the property of the bank, for the purpose of liquidation, under the orders and direction of the court, became a part of the judgment. It is well settled that an attempt upon the part of the legislature to vacate or modify the conditions of an existing judgment is beyond its constitutional powers, and that an enactment attempting such

an exercise of power is unconstitutional and void. (*Ex Parte Darling*, 16 Nev. 98, 40 Am. Rep. 495; *Martin* v. *South Salem Land Co.*, 94 Va. 28, 26 S. E. 591; *Skinner* v. *Holt*, 9 S. D. 427, 69 N. W. 595, 62 Am. St. Rep. 878; *Butler* v. *Supervisors*, 26 Mich. 22; *Gaines* v. *Executors*, 9 B. Mon. (Ky.) 295, 48 Am. Dec. 425; *Roche* v. *Waters*, 72 Md. 264, 19 Atl. 535, 7 L. R. A. 533; *Lincoln* v. *Alexander*, 52 Cal. 482, 28 Am. Rep. 639; *Merrill* v. *Sherburne*, 1 N. H. 199, 8 Am. Dec. 52; *In re Chetwood*, 165 U. S. 443, 460, 17 Sup. Ct. 385, 41 L. Ed. 782.)

In *Martin* v. *South Salem Land Co.*, *supra*, the court said: "The legislature, within certain limitations, may alter or control remedies by which litigants ascertain their rights in the courts; but, when the litigation has proceeded to judgment and decree upon the merits of the controversy, it has passed beyond its power."

The judgment ordering the State Bank and Trust Company into involuntary liquidation, and ordering its property and interests out of the control and management of the board of directors and into the hands of the receiver, vested in the receiver the control and disposition of the property, subject to the orders of the court, for the benefit of the creditors and stockholders of the company. The right to have the property of the corporation administered in accordance with the provisions of the judgment and the statute upon which it was based is a right of property which the legislature is without power to disturb. (*Gilman* v. *Tucker*, 128 N. Y. 190, 28 N. E. 1040, 13 L. R. A. 304, 26 Am. St. Rep. 464; *Bates* v. *Kimball*, 2 D. Chip. (Vt.) 77; *Strafford* v. *Sharon*, 61 Vt. 126, 17 Atl. 793, 18 Atl. 308, 4 L. R. A. 499; *Searcy* v. *Turnpike Co.*, 79 Ind. 274; *Taylor* v. *Place*, 4 R. I. 324; *People* v. *Supervisors*, 26 Mich. 22; *U. S.* v. *Peters, Judge*, 5 Cranch, 115, 3 L. Ed. 53; *McCullough* v. *Virginia*, 172 U. S. 102, 19 Sup. Ct. 134, 43 L. Ed. 382; *Memphis* v. *U. S.*, 97 U. S. 293, 24 L. Ed. 920.)

In *McCullough* v. *Virginia*, *supra*, the court, by Brewer, J., said: "But there are more substantial reasons than this for not entering this motion. At the time the judgment was entered in the circuit court of the city of Nor-

folk, the act of 1882 was in force, and the judgment was rightfully entered under the authority of that act. The writ of error to the court of appeals of the state brought the validity of the judgment into review, and the question presented to that court was whether at the time it was entered it was lawful or not. If lawful, the plaintiff therein had a vested right which no other legislation could disturb. It is not within the power of the legislature to take away rights which have been once vested by a judgment. Legislation may act on all subsequent proceedings, may abate actions pending, but, when those actions have passed into judgment, the power of the legislature to disturb the rights created thereby ceases."

In *Gilman* v. *Tucker, supra,* Ruger, C. J., delivering the opinion of the court, said: "We must bear in mind that a judgment has been rendered, and the rights flowing from it have passed beyond the legislative power, either directly or indirectly, to reach or destroy. After adjudication the fruits of the judgment become rights of property. These rights became vested by the action of the court, and were thereby placed beyond the reach of legislative power to affect."

The receiver is "the officer or agent of the court from which he derives his appointment; his possession is exclusively the possession of the court; the property being regarded as in the custody of the law, *in gremio legis,* for the benefit of whoever may be ultimately determined to be entitled thereto. * * * And, since the possession of a receiver is that of a court, it is held that a change in the receiver does not have the effect of interrupting that possession." (High on Receivers, 4th ed. sec. 134.) It is manifest, however, from a reading of section 79, *supra,* of the act of 1911, that something more than a mere change of receivers is sought to be accomplished thereby, for the property of the bank would be taken out of the direction and control of the court entirely, and it would cease to be in the custody of the law. The change would be from the custody of the court to the custody of an executive officer.

.

The contention that the legislature has merely affected the remedy for carrying out the judgment of the court and leaves the judgment of the court unaffected is without merit. The section in question requires the receiver, within sixty days of the date of the act, to file a complete statement and account of all his acts, receipts, and disbursements, and when this is approved he is discharged. Not only this, but the functions and powers of the receiver are terminated by virtue of the act itself, which, without application to or order of the court, transfers the bank with its property and accounts into the hands of the bank examiner, within ten days of the approval of the act, without even the necessity of a demand, "and the said bank examiner shall thereupon proceed to administer, liquidate and settle the same *as in this act provided.*" Although the receiver is the officer and agent of the court, appointed by it and responsible to it, the legislature assumes to impose a new duty upon him—that of surrendering his trust to an executive officer, without the order or approval of the court whose agent alone he is or can be. This may be called a remedy, to be sure, the taking of property, presumably of great value, out of legal custody and placing it in the control of an executive officer and board; but it is not a remedy for the carrying out of any court decree, for if this remedy could be applied there would scarcely be enough of the decree left worth mentioning. Under the guise of changing remedies, the legislature cannot destroy the right itself.

Suppose the next legislature should repeal the act of 1911, and the office of bank examiner be terminated, what would then be the status of the control and possession of the bank? The receiver has wound up his affairs and has been discharged. The directors of the bank are enjoined from assuming any control of the property. In such a case it would appear to us that the only course that could be pursued would be another application to the court for the appointment of another receiver under the general equity powers of the court. The legislature

may remove at will officers of its own creation, but manifestly it cannot remove officers who derive their powers and functions from the courts, a coordinate branch of government. What the legislature cannot do by direction, it cannot do by indirection. There is a limitation even upon the right of a legislature to control remedies. If the remedy is so closely interwoven with the right itself as to become practically an essential part of it, then the legislature, after judgment and in certain cases before judgment, cannot alter the remedy, for to do so is to interfere with or destroy the right.

In *Memphis* v. *U. S., supra,* the Supreme Court of the United States quotes the following extract from *Fisher's Negroes* v. *Dabbs,* 6 Yerg. (Tenn.) 119: "A distinction between the right and the remedy is made and exists. But where the remedy has attached itself to the right, and is being prosecuted by due course of law, to separate between them and take away the remedy is to do violence to the right and comes within the reason of that provision of our constitution which prohibits retrospective, or, in other words retroactive, laws from being passed, or laws impairing the obligation of contracts."

As before pointed out, section 79, *supra,* by mere force of its own provisions, transfers possession of the property of the bank out of the custody of the receiver and the possession and authority of the court, without notice, order, or any hearing whatever. The legislature might have directed that the bank examiner apply to the court to be substituted as receiver of any bank theretofore by decree ordered into involuntary liquidation, and the court doubtless would have the power to make the substitution, whether it could be compelled to accept a receiver designated by the legislature or not, for carrying into effect its judgment previously entered—questions we are not now called upon to consider. But if this were the provisions of the statute it would have contemplated notice and hearing, when all parties interested would have a right to be heard. We need not determine whether the legislature has authority under its police power, as a mat-

ter of regulation merely, to authorize the bank examiner to take possession and control of the affairs of a going bank which he, or the board of bank commissioners, have determined to be insolvent, and to wind up its affairs, without notice, proceeding, or hearing in the courts; but, if this great power of diverting the control of such valuable property rights out of the hands of those who otherwise are rightfully entitled to it can be sustained at all, it can only be sustained, as before stated, as an exercise of police power, for from every other standpoint it violates what has been, over and over again, declared to be a fundamental right, that no one can be deprived of property rights without notice and an opportunity to be heard in a court of justice.

A few states have statutes of this kind, but thus far they have not been brought into question. All of these, we believe, however, have provisions authorizing the owners or directors of the bank to institute proceedings to enjoin the bank commissioners or examiner from proceeding when the question of the insolvency of the bank can be judicially determined, and this may be a sufficient saving clause to relieve such a statute from the objection that it is a deprivation of due process of law. But even that is not the case here. The State Bank and Trust Company has been adjudicated to be insolvent, or, what in its case was practically the same thing, ordered into involuntary liquidation. Banks that have already, by final judgment, been placed in the hands of a receiver for liquidation cannot by any reasonable hypothesis be said to continue to be subject to future regulation under the police power of the legislature, such that the possession and control of the court can be ousted and an executive officer substituted therefor by the mere fiat of the legislature.

In *Hettel* v. *District Court*, 30 Nev. 382, 133 Am. St. Rep. 730, we annulled on *certiorari* an order of court appointing a receiver for a corporation and restraining its directors from exercising their powers of control over its affairs made *ex parte*, under the provisions of section

94 of the general incorporation act (Stats. 1903, p. 155), and held that, while said section made no provision for notice of hearing, it could not be sustained without construing into it provisions for notice to all parties interested and an opportunity for a hearing.

In *Golden* v. *District Court*, 31 Nev. 250, relative to a similar question, we said: "Considering the foregoing section in the recent case of *Hettel* v. *First District Court*, 30 Nev. 382, 133 Am. St. Rep. 730, we said: 'The foregoing section provides for a number of situations, the existence of any of which would authorize the court to make an order appointing a receiver and dissolving the corporation. The corporation in the present instance is sought to be dissolved, and a receiver appointed, upon the ground that "its assets are in danger of waste through attachment and litigation." Manifestly the corporation, its officers and stockholders, are interested in any such proceeding. The statute makes no provision for the procedure to be followed to obtain such order. For the holder or holders of one-tenth, or any other interest, of the capital stock of a corporation, to be able to secure an order of dissolution, and as a result of such order place the corporation in the hands of a receiver upon the mere application for such order without notice or hearing, could not, we think, be sustained, even though an attempt to confer such authority upon a court by statute were made. (10 Cyc. 1309; *Wright* v. *Cradlebaugh*, 3 Nev. 349; *People* v. *Seneca Lake Co.*, 52 Hun, 174, 5 N. Y. Supp. 136; *Crowder* v. *Moone*, 52 Ala. 220.) But the section of the statute in question does not confer such authority upon a court. It simply provides that a holder or holders of one-tenth of the capital stock may apply to the district court for such an order. The statute must be construed, if possible, to give it force and effect. It cannot have effect unless such an order can be made only upon a showing after all parties interested have had an opportunity to be heard.'"

In the Golden case we also quoted the following from *People* v. *O'Brien*, 111 N.Y. 1, 18 N. E. 692, 2 L. R. A. 255, 7 Am. St. Rep. 684: "But an objection to this act even

more serious than those considered is found in the provision for the appointment of a receiver of the property of the dissolved corporation, and the transfer of its assets to him by force of the statute, after the title thereto had become vested in its directors. It will not be claimed that the appointment of such a receiver by the court, in an action against a stranger, without notice to the trustees, in the absence of the authority conferred by chapter 310, Laws 1886, would confer upon him the title to property previously vested in others. (*Parker* v. *Browning*, 8 Paige, 388, 35 Am. Dec. 717.) We cannot see how this case differs from the one supposed. The only authority the court had for making the appointment was derived wholly from the provisions of this act; and the court was not thereby invested with any judicial authority or discretion, except that of designating the holder of the title assumed to be transferred by the act. The court has, by virtue of its general jurisdiction over trusts, authority to appoint to a vacant trusteeship, and, perhaps, for cause, to remove fraudulent, dishonest, or incompetent trustees and appoint others to perform the duties of the trust, in order to avoid a failure thereof; but we know of no authority for a court to appoint a receiver of property, vested in trustees, without cause and without notice to them, or opportunity afforded to defend their title and possession. As was said by Judge Earl, in *Stuart* v. *Palmer*, 74 N. Y. 184, 30 Am. Rep. 289: 'Due process of law requires an orderly proceeding, adapted to the nature of the case, in which the citizen has an opportunity to be heard, and to defend, enforce, and protect his rights. A hearing and an opportunity to be heard is absolutely essential. We cannot conceive of due process of law without this.' And the chancellor had previously said, in *Verplanck* v. *Mercantile Insurance Company*, 2 Paige, 450: 'Another fatal objection to the regularity of these proceedings is that the appellants were deprived of the possession of their property without having an opportunity of being heard, and without any sufficient cause for such a summary proceeding. By the

settled practice of the court in ordinary suits, a receiver cannot be appointed *ex parte* before the defendant has had an opportunity to be heard in relation to his rights.' (*Devoe* v. *Ithaca & O. R. Co.*, 5 Paige, 521; *Ferguson* v. *Crawford*, 70 N. Y. 256, 26 Am. Rep. 589.) As we have seen, the property of this corporation vested in the persons who were its directors at the time of its dissolution. They took it as trustees for stockholders and creditors, and were not made parties to the action in which the receiver was appointed. No legislation can authorize the appointment of a receiver of the property of A, in an action against C, without violating the provisions of the constitution in relation to the taking of property without due process of law. That the legislature might amend the provisions of the Revised Statutes in relation to the devolution of property of dissolved corporations is indisputable, and, if it had done so in the act of dissolution, it would undoubtedly have prevented the vesting of the property in the trustees; but this it did not do, and it had no right, by mere force of legislative enactment, to take vested property from one individual or trustee and give it to another. (*McLaren* v. *Pennington*, 1 Paige, 102; *Dartmouth College* v. *Woodward*, 4 Wheat. 518, 4 L. Ed. 629.)"

We see no less reason for holding that the legislature cannot, by mere force of legislative enactment, take property which has by due process of law become vested in a court for purposes of distribution to those lawfully entitled to it, and vest it in another for the same purpose, than in any other case where vested rights have been so attempted to be changed; but, upon the contrary, there is additional reason why it cannot be done, for it is an attempted infringment upon the functions of the judicial branch of government. In *Lincoln* v. *Alexander*, 52 Cal. 482, 28 Am. Rep. 639, cited *supra*, the Supreme Court of California (quoting from the syllabus), held: "The guardian of a minor's estate has an authority coupled with an interest in the estate, not a bare authority. Where a duly qualified and acting statutory guardian has charge of a minor's estate, the legislature cannot by special act

empower another party to dispose of the estate. Such an act would be judicial in its nature, and therefore unconstitutional."

Whether or not the State Bank and Trust Company could be wound up more advantageously to the depositors and stockholders under the direction and control of the state bank examiner, rather than the receiver, who has had three years in which to study its conditions and become acquainted with its affairs, is not a question involved in this proceeding. If we were not here dealing with a final decree, which has passed beyond the power of the legislature to modify or annul, and conceding, for the purposes of the case, that there was no other constitutional impediment, it would then be a question of wisdom and policy for the legislature, with which courts have nothing to do. This character of legislation, however, presents a question worthy of consideration, though the question be not strictly a legal one. The enactment, or attempted enactment, of legislation doing away with receiverships doubtless has come about through the failure in some instances of the courts themselves to perform their full duty in the matter of the winding up of insolvent estates.

Some of the criticism that has been made and is being made throughout this country, relative to the delay and expense involved in receiverships, is doubtless based upon substantial grounds, while much of it is without real merit. What there is of merit in the matter of complaints, as to undue expense and delay in receiverships, courts themselves must ascertain, and apply the cure. The law of receiverships is well settled, and we think it may be conceded that the fault does not lie with the law itself, but in its application in individual cases. In every case of receivership the responsibility must largely rest upon the individual judge and his appointee, the receiver, as to whether the estate has been closed with due regard to time and expense. The law itself does not tolerate undue delay or unreasonable expense in receiverships, and in cases where there has been such the fault has

been that the court and the receiver have failed to perform their true functions within the law.

We are speaking very generally, and what we have said is directed to no specific case; and, in recognizing that there are to be found cases where receiverships have failed in the execution of the trust, we do not wish to be understood as in any way conceding that the law of receiverships is inherently defective. The power vested in the courts to appoint receivers is one of the most beneficent in our whole system of jurisprudence, but, like every other power for good, individual cases may be found where the power may have been abused. But if we concede that individual cases may be found where this power has not been properly exercised, does it follow that the legislative or executive branch of government is better qualified to assume the exercise of this great power of administering the property of others, than is the judicial branch of government? To admit such a proposition is to admit that our system of government is a failure. That, as a general system of law, the idea that an executive officer, independent of judicial control, can better administer large estates, which are the property of others, than can be done through the agency of the courts, is preposterous. That in a specific case a thoroughly competent executive officer would do better than an incompetent appointee of a court, not removed, goes without saying; but we are not considering individual cases, but a general system.

The whole proposition, however, is beyond the realm of controversy, for the constitution determines that there shall be three separate, coordinate branches of government, the legislative, executive, and judicial, and that neither branch shall perform functions that essentially belong to one of the other branches. The appointment of receivers and the winding up of insolvent corporations are judicial in nature, and are functions of the judicial branch of government, and not of the executive or legislative, further than the latter may prescribe procedure.

As before stated in this opinion, the legislature may,

within its police power, regulate and control banks, and it may be that the police power is extensive enough to authorize the seizure of such bank by a bank examiner upon his judgment, or that of a commission, that the bank is insolvent, and, without a hearing and a determination in advance by a court, authorize him to proceed to liquidate its affairs, subject to the right of an appeal to the courts by the bank's officers or other parties in interest; but it is conceded that this assumed power, yet to be determined, could not be exercised, even under the police power, so as to cut off the interposition of the courts to determine the question of the bank's right to continue its business.

Our attention has been called to the fact that section 79 is the last section of the àct following sections which contain provisions for the repeal of acts in conflict, and making an appropriation for carrying it into effect, as indicative that said section was not within the original contemplation of the framers of the act, but was subsequently added as an afterthought.  While, if this were the fact, the section would not, for that reason, be vitiated, it may afford some indication that this section was subsequently added to the pending bill as an amendment and passed without the usual opportunity for examination and consideration by the legislature or public, and thus its unconstitutional features may have escaped detection by the legislature.

As we are of the opinion that section 79, *supra,* is manifestly unconstitutional and void, it follows that the application for *mandamus* must be dismissed.

It is so ordered.

## ON PETITION FOR REHEARING

*Per Curiam:*

The petition for a rehearing is denied.