[Nos. 2073 and 2074]

STATE OF NEVADA, Ex Rel. JOHN SPARKS, Et AL., AS THE STATE BANKING BOARD, PLAINTIFF, *v.* STATE BANK AND TRUST COMPANY (A CORPORATION), DEFENDANT.

IN THE MATTER OF ORDERS FIXING THE COMPENSATION OF F. L. WILDES, RECEIVER, AND THE COMPENSATION OF THE ATTORNEYS FOR THE RECEIVER.

STATE OF NEVADA, Ex Rel. JOHN SPARKS, Et AL., AS THE STATE BANKING BOARD, APPELLANT, *v.* F. L. WILDES, AS RECEIVER, RESPONDENT.

[139 Pac. 505 and 142 Pac. 627]

OPINION OF TALBOT, C. J.

1. RECEIVERS—COMPENSATION—NOTICE OF MOTION.

A party or person interested in an action wherein a receiver is appointed must be served, as provided by statute, with notice of a motion to fix his compensation, or the order is made *ex parte.*

2. MOTIONS—NOTICE—EX PARTE ORDER.

If the statute does not provide for notice of a motion by publication, it would not be any notice, and the order made thereon would be *ex parte.*

3. BANKS AND BANKING—ACT OF 1907—COMPENSATION OF RECEIVER—NOTICE TO ATTORNEY-GENERAL.

At the time orders fixing the compensation of the receiver, appointed under the provisions of the banking act of 1907 (Stats. 1907, p. 229) were made, there was no statute authorizing the attorney-general to oppose them, nor providing that he should be served with notice of motions to fix such compensation.

NORCROSS, J., concurring.

4. BANKS AND BANKING—ACT OF 1913—COMPENSATION OF RECEIVER—AUTHORITY OF ATTORNEY-GENERAL.

Since the passage of the act of 1913 (Stats. 1913, c. 204) the attorney-general is authorized to appear in the State Bank and Trust Company receivership case, in the name of the state, on behalf of the creditors.

5. BANKS AND BANKING—REGULATION OF BUSINESS.

The banking business is so essential to the public welfare that laws may be passed for its regulation.

6. BANKS AND BANKING—REGULATION BY STATE—POLICE POWER.

Under the police power the state may control the banking business and protect the depositors after a bank's failure, and may authorize the attorney-general or other officer to do so, and so from the passage of the act of March 2, 1913 (Stats. 1913,

c. 204), authorizing the attorney-general to proceed as he may deem necessary in relation to the affairs or receivership of the State Bank and Trust Company, he could intervene in an action by the state to wind up its affairs, either to protect depositors or for the benefit of the state.

7. BANKS AND BANKING—RECEIVERS—FIXING COMPENSATION.
Though, when orders were made fixing compensation of the receiver of the State Bank and Trust Company in an action by the state to wind up its affairs, the attorney-general was not authorized to appear therein, he became authorized by the act of March 2, 1913 (Stats. 1913, c. 204), allowing him to proceed as he might deem necessary in such action, and could move to set the orders aside because made *ex parte*, where the services of the receiver had not been terminated or his accounts closed.

8. MOTIONS—NOTICE BY PUBLICATION.
Publication of notice of a motion for ten days is not a service, and could not cut off or affect the rights of any party in interest unless such publication is authorized by statute.

9. PROCESS—CONSTRUCTIVE SERVICE—COMPLIANCE WITH STATUTE.
There must be strict compliance with the statutes as to constructive service, which, under our practice, apply to both law and equity cases.

10. BANKS AND BANKING — RECEIVERS — FIXING COMPENSATION — MOTION—NOTICE BY PUBLICATION.
With no law authorizing notice by publication, and applying Rev. Laws, secs. 5367–5370, providing only for service of notice by personal delivery, by leaving a copy, and by mail and telegraph in certain cases, publication of notice of motions to fix compensation of the receiver of the State Bank and Trust Company did not cut off rights of the state or depositors or parties in interest from a hearing or assertion of their rights, or from proceeding to vacate the orders, by showing the allowance or claim to be excessive.

11. BANKS AND BANKING—RECEIVERS—FIXING COMPENSATION—SETTING ASIDE ORDERS—POWERS OF STATE.
If orders fixing compensation of the receiver of the State Bank and Trust Company, in an action by the state to wind up its affairs, were made after notice, they could be regarded as final and subject to attack only by appeal, but, if made without the personal service required by law, the state, under its police power to supervise the banking business, acting by the attorney-general pursuant to the act of March 2, 1913 (Stats. 1913, c. 204), providing for his intervention, and within the time prescribed by district court rule 45, could move to set them aside pursuant to Rev. Laws, sec. 5084, for want of proper notice, and could appeal from an adverse decision, for the purpose of reducing excessive compensation allowed.

12. APPEAL AND ERROR—REVIEW—INSUFFICIENT RECORD.
Where a receiver's accounts are not made part of the record on appeal from an order refusing to set aside an order fixing

his compensation, it is not shown on such appeal that the petition for compensation misled the court by misstating his accounts, so that a mistake in its action appeared as a matter of record below.          ·

NORCROSS, J., dissenting.                                        ·

⌐ OPINION OF McCARRAN, J.

1. BANKS AND BANKING—ACT OF 1907—COMPENSATION OF RECEIVER —NOTICE TO STATE.                                  ·

The receivership, being the essence of the judgment entered in pursuance of the statute of 1907 (Stats. 1907, c. 119) at the instance of the state as the party plaintiff, the state was interested in orders affecting the compensation of the receiver, by reason of the police powers exercised in furtherance of public welfare, and was entitled to notice, as a party in interest, of any motions, subsequent to the final order creating the receivership, to fix the compensation of the receiver, for the reason that the same affected the force of the original judgment creating the receivership.

## ON PETITION FOR REHEARING

1. ACTION — PROCESS — SERVICE — PUBLICATION — CHANCERY PROCEEDINGS.

Civil Practice Act (Rev. Laws, sec. 4943) section 1, providing that there shall be in the state but one form of civil action for the enforcement or protection of private rights, renders the practice act applicable to chancery proceedings, so that process may be served by publication only in such cases as is authorized by statute; the court having no jurisdiction in other cases to order such service.

2. MOTIONS—PROCESS—VACATION OF ORDERS—SERVICE—STATUTES— COURT RULES.

Civil Practice Act (Rev. Laws, sec. 5367) section 425, providing that written notices and other papers, when required to be served on a party or his attorney, shall be served in the manner prescribed in the next three sections, when not otherwise provided, and district court rule 10, relating to service of notice, and rule 45, providing that motions to vacate orders may be made within six months on notice to the adverse party, are applicable to chancery proceedings.

3. RECEIVERS—COMPENSATION—ALLOWANCE—NOTICE.

The act of 1913 (Stats. 1913, c. 204) authorized the attorney-general to institute an investigation of all the affairs of a certain bank and trust company and of the receivership thereof, and to take necessary legal proceedings in any action then pending in any court affecting the affairs of the receivership of the bank, etc. *Held* that, where orders were entered in the receivership proceeding prior to the passage of such act allowing compensation to the receiver and his attorneys without

notice served on the attorney-general otherwise than by publication, such orders were *ex parte* as to him, and he was authorized by the act to appear on behalf of the state and contest their validity.

NORCROSS, J., dissenting.

APPEAL from the First Judicial District Court, Ormsby County; *Frank P. Langan,* Judge.

Action by the State, on the relation of John Sparks and others, as the Board of Bank Commissioners, against the State Bank and Trust Company. From an order refusing to set aside an order fixing the compensation of F. L. Wildes, as receiver of defendant, and from an order allowing him attorney's fees, plaintiff appeals. **Reversed. Rehearing denied.**

*Geo. B. Thatcher,* Attorney-General, and *William Forman,* for Appellant.

*Mack, Green & Heer,* for Respondent.

By the Court, TALBOT, C. J.:

In this action, which was brought by the board of bank commissioners, the receiver was appointed on May 18, 1908, to wind up the affairs of the State Bank and Trust Company, which had been declared an insolvent and unsafe institution. An order was entered on the 8th day of November, 1912, fixing the receiver's attorneys' fees for services rendered to October, 1912, and an order was entered on the 7th day of March, 1913, allowing the compensation of the receiver up to the first day of August, 1912. On May 8, 1913, the attorney-general, acting for the state as plaintiff, served notice on the defendants, the receiver and his attorneys, that on the 20th day of May he would move to set aside these two orders. This appeal is taken from the orders entered, after hearing, on the 7th day of June, 1913, denying these motions to vacate.

Of the twelve specifications in the motion to annul the order fixing the compensation of the receiver, only the first and the third need be considered, and only the first

one has been urged in this court as a ground for reversal. They are:

"I. That no notice of the presentation of the petition or notice of motion for order fixing the compensation of the receiver was ever given or served upon the plaintiff herein or upon the attorney-general of the State of Nevada, nor was there any appearance therein on behalf of the plaintiff herein, the State of Nevada.

"III. That the court, upon the hearing of said petition for an order fixing the compensation of said receiver and upon the evidence adduced thereat, found as a matter of fact that the 'income from the real estate of the bank has practically paid all of the expenses of the receivership. When this real estate came into the hands of the receiver, including the Tonopah and Goldfield banks buildings, it was largely vacant and untenanted. With careful attention and effort these buildings have been filled with paying tenants, and have been made not only self-sustaining, but show a profit equal to, if not greater than, the expenses of the receivership,' when in truth and in fact it is shown on the report of the receiver on file herein that the gross income from all the real estate up to February 18, 1913, is and was $93,452.45, and that the maintenance and expense paid out on behalf of said real estate is and was $62,056.05, exclusive of taxes, leaving a net income from all of said real estate the sum of $31,396.40, from which said net income the taxes paid on said real estate should be deducted, said reports showing that the sum of $12,574.56 has been paid for taxes, but not showing what amount was paid upon the real estate. Whereas it is shown and appears from the report of the receiver on file herein that the total expense of the receivership, exclusive of the expense chargeable to maintenance and expense on real estate, is and was the sum of $145,049.81, leaving a balance of expense of said receivership over and above the net income from said real estate the sum of $114,053.21, and being nearly four times the net amount of the income from said real estate."

The respondent, receiver, has moved to dismiss the

appeals upon the ground that the appellant is not an aggrieved or adverse party and has no appealable interest, and upon the ground that they will not lie from an order refusing to set aside another order, and that they can be reviewed only upon direct appeal from the original order.

The point which the attorney-general and associate counsel for the state have urged in this court as a ground for the reversal of the order refusing to vacate the order fixing the compensation of the receiver and the order fixing the compensation of the attorneys for the receiver is that no notice of the motions to fix these compensations was served upon the attorney-general prior to the order of the court fixing them. Was the state, or the attorney-general as its legal representative, entitled to notice of the application to have these compensations fixed; and, if so, was there such notice by personal service or publication as the statute requires? Should the orders be set aside because such notice was not given?

[1] If it be conceded that, as urged on behalf of the receiver, the state, or the plaintiffs in the action, were not entitled to notice of the motion to fix the compensation of the receiver, it must be admitted that some one who is a party to or interested in the action would have to be served, as provided by the statute, with notice of the motion to fix the compensation, or that, if such service of notice was not made, the order was made *ex parte.*

[2] Notice by publication, not provided for by the statutes, whether the parties or their attorneys are in the state or not, would not be any notice, and consequently the order made upon such notice would be an *ex parte* order:

[3] The receiver was appointed under the banking act of 1907, which authorized the attorney-general, at the request of the state bank commissioner, to institute an action in the name of the state against any insolvent or unsafe bank, and to have a receiver appointed for the

purpose of liquidation. At the time the orders fixing the compensation were made, there was no statute authorizing the attorney-general to oppose them, nor providing that he should be served with notice of these motions. The statute at and prior to that time provided that the banking board and attorney-general could bring suit and have insolvent banks placed in the hands of a receiver, who is an arm of the court, and should close the affairs of the institution, but at that time the attorney-general was not authorized to follow, on behalf of the stockholders or the state, the settlement of the bank's affairs.

[4] Under the act of the legislature of March 24, 1913 (Stats. 1913, c. 204), the attorney-general is "authorized and empowered to take such proceedings as he may deem necessary in any action now pending in any court affecting in any way the affairs of the receivership of the said State Bank and Trust Company; also to institute, maintain, and prosecute any action or actions, suit or suits, which he may deem necessary, either civil or criminal, in the name of any proper party plaintiff, or in the name of the State of Nevada, against any party, person, officer or corporation, the subject-matter of which action or actions shall in any manner affect, pertain to or be connected with the affairs of said State Bank and Trust Company or of the receivership thereof." Prior to the passage of this statute, that officer was not authorized to appear in such actions after the appointment of the receiver. Since its passage he is authorized to appear, in the name of the state, on behalf of the creditors, if the act of the legislature is constitutional and within the police powers of the state.

[5] As often held by this and other courts, the banking business is so essential to the public welfare that laws may be passed for its regulation. Decisions holding that the state has no interest or power to appear after the appointment of a receiver in actions pending for the liquidation of insolvent banks were made in cases where

there was no statutory provision similar to the one passed at the last session of the legislature authorizing the attorney-general to appear in the action after the appointment of a receiver, and in cases decided before the decisions of the Supreme Court of the United States upholding the bank guaranty laws in Oklahoma, Kansas, and Nebraska. (*Noble State Bank* v. *Haskell*, 219 U. S. 112, 31 Sup. Ct. 186, 55 L. Ed. 112, 32 L. R. A. n. s. 1062, Ann. Cas. 1912A, 487; *Shallenberger* v. *First State Bank*, 219 U. S. 116, 31 Sup. Ct. 189, 55 L. Ed. 117; *Assaria State Bank* v. *Dolley;* 219 U. S. 122, 31 Sup. Ct. 189, 55 L. Ed. 123.) In these decisions, overruling earlier ones of some of the intermediate federal and state courts, the Supreme Court of the United States held that the laws requiring all state banking institutions to contribute to a fund to be handled by a commission or under state authority, and to be applied to the payment of the claims of depositors in insolvent banks, were constitutional.

[6] The sustaining of these laws was in effect a holding that the state, under the police power, may continue to protect the depositors even after the bank has failed, instead of leaving him to hire his own attorneys and to be required to pursue his own methods to protect his interests. It being settled by the Supreme Court of the United States that the state may do this, it follows that the state has control of the banking business under the police power, and that it may authorize its attorney-general or other officer to protect the interests of depositors in defunct banks; and consequently, from the time of the passage of the act of March 24, 1913, the attorney-general was authorized, under the broad powers given him by that statute, to intervene or proceed in the action, whether it be considered for the protection of the depositors or for the benefit of the state.

[7] Although the state had given him no authority to so appear at the time the orders fixing the compensations were made, he became authorized, under the general terms of this statute, to move to vacate these orders because they had been made *ex parte* and the service of

the receiver had not been terminated or his accounts closed.

The powers of the attorney-general may be likened in principle to the authority conferred upon a stockholder who directs his attorney to bring a suit and have the affairs of a private corporation thrown into the hands of a receiver, and did not at first authorize the attorney to proceed further, but who later, and after the compensation of the receiver had been fixed, authorized the attorney to take some proceeding to reduce the amount of compensation allowed the receiver. The litigant, as well as the state in this case, would be a party to and be interested in the proceeding all the time, but, during the period intervening between the appointment of the receiver and the fixing of the compensation, the attorney would not be authorized to act for the litigant.

In the opinion overruling the motion to vacate, it is said: "I cannot take the position that no notice of the hearing of the petition to fix receiver's and attorney fees was necessary. Nor do I adhere to the statement of counsel that when the court declared the State Bank and Trust Company as a bank unsafe to continue business and issued an injunction preventing it from carrying on any further business, the state and its attorney-general had no longer anything to do with the liquidation of the bank and had no interest therein. I am of the opinion, however, when the final judgment placing the bank in liquidation and appointing a receiver was made, that the state no longer had such an interest in the proceedings of liquidation as would entitle it or its attorney-general to personal and written notice of all or any proceedings taking place in the course of the liquidation. It is conceded by Mr. Thatcher, the attorney-general, and Mr. Forman, representing the state, that notice by publication of the hearing of both petitions in the Carson City News was had, and that such notices were ordered by the court to be published. By said notices the times and places of the hearings of the petitions were fixed and all persons interested therein directed to appear and make their

objections, if any they had, to the granting of the petitions. On the hearings, of which the state, in my judgment, had due notice, the state was not represented— did not appear—and in my opinion is not in a position to complain of want of notice."

From this it is apparent that the learned district judge, proceeding with the utmost good faith, regarded the published notice as effective.

[8] But the publication for ten days in the newspaper of notice of motion to fix compensation is not a service and could not cut off or affect the right of any party in interest unless such publication was authorized by statute. If each judge could legislate or determine regarding the kind of notice required, one judge might deem ten days, another thirty days, or another one day, sufficient publication, and litigants who are not served personally, or in some other method provided by statute, of which they are required to take notice, might be deprived of their rights unawares. The decisions are uniform holding that there must be a strict compliance with statutory provisions relating to constructive service. Under our practice these apply to both law and equity cases.

[9] The fact that it may be difficult to serve over 4,000 depositors except by a single publication cannot alter the law or avoid the necessity of service in accordance with the statute, any more than in a case where the defendants are so very numerous and it would be attempted to serve them by publication of summons when this statute does not warrant such service on parties residing within the state. Relief from such a situation might be sought only under the code provision that, where the parties are numerous, one or more may sue or defend for all. There are many cases relating to the settlement of estates of deceased persons, and to other matters, in which provision is made for service of notice by publication.

[10] With no statute authorizing notice by publication regarding the fixing of the compensation of a receiver, and applying the general provisions of the practice act relating to service of notice, it is found that they provide

only for service by personal delivery, by leaving a copy, and by mail and telegraph in certain cases. (Rev. Laws, secs. 5367–5370.) Hence the publication did not cut off the rights of or prevent the state or depositors or parties in interest from having a hearing and asserting their rights, or from instituting proceedings to have the orders fixing compensation vacated, so that they might have an opportunity to appear, present evidence, and show that the compensation allowed or claimed was excessive.

[11] If there had been a law directing notice by publication, and notice had been published in accordance therewith, it would then become more important to consider whether the state, or any party to the action, might proceed to have the order fixing compensation vacated under section 5084 of the Revised Laws, which provides that, when there has not been personal service upon the defendant, the court may allow him or his legal representative, on such terms as may be just, at any time within six months after the rendition of any judgment, to answer to the merits, or under district court rule 45, which provides:

"No judgment, order, or other judicial act or proceeding, shall be vacated, amended, modified, or corrected by the court or judge rendering, making, or ordering the same, unless the party desiring such vacation, amendment, modification, or correction shall give notice to the adverse party of a motion therefor, within six months after such judgment was rendered, order made, or action or proceeding taken."

Under the decisions, this rule relating to a matter of practice has the force of a statute. The motions to vacate were made within six months from the time of the fixing of the compensations.

From final orders made upon proper service there may be no relief obtainable except by appearance and answer or by appeal, but statutory and court rule provisions for vacating *ex parte* orders, made without notice and for setting aside default judgments, from which there is no appeal, are fair and equitable, because they allow the

party aggrieved to defend. He should not be deprived of the opportunity to appear and defend and to appeal. If the orders fixing compensation had been made after proper notice, they could be regarded as final and subject to attack only by appeal, unless possibly upon a showing of inadvertence and merits.

The case is different from the ordinary one in which only individual litigants are concerned over some matter of private interest, not only because it comes under the police power of the state, which may supervise the banking business because so essential to the public welfare, and legislate for the protection of depositors before and after the bank has failed, not only that the public generally may have more confidence in dealing with and in placing their money in banking institutions because they may have assurance of protection against bank failures, and of being further protected if the bank does fail, but because the receiver in this case, appointed to serve the creditors or stockholders of the defunct institution, to act on their behalf, at their expense, is an arm of the court which, as well as this tribunal under its supervisory power, is duty bound to safeguard the rights of all who seek justice at its portals. Consequently the efforts of the attorney-general, in accordance with the statute, to reduce any excessive compensation allowed, are not inhibited by the constitution.

[12] Regarding the third ground specified in the notice of motion to set aside the orders fixing the compensations, whether the accounts of the receiver or the petition asking to have the compensation fixed showed misstatements which would support these assertions and show on the record that the court had been misled, and by mistake had stated that the amounts derived and handled by the receiver were largely in excess of the amounts actually received by him from the income from real estate, so that it would appear as a matter of record that a mistake had been made in fixing the compensation, which should be corrected upon motion or by the court on its own volition,

so that any party in interest moving to have it corrected could appeal from an order refusing to vacate the order fixing the compensation, because, as generally held, mistakes apparent in the record should be corrected with or without motion, is not shown, because the accounts are not made a part of the record on appeal.

The orders of the district court are reversed.

McCARRAN, J., concurring:

I concur in the judgment. The judgment entered by the court below, in the first instance, appointing a receiver was a final judgment entered on behalf of the state and in favor of the state in an action in which the state was plaintiff. (*State* v. *Wildes*, 34 Nev. 94, 116 Pac. 595.) The receiver was the creature of the judgment. In fact, the receivership was the judgment itself. The state, through the exercise of its police power, had the right, and it was its duty, to have this judgment entered pursuant to the statute of 1907 (Stats. 1907, c. 119) and to have this receivership created.

The receivership, being the very essence of the judgment, and being that which was sought for by the state, acting in pursuance of its legislative declaration, was the thing in which the state was most vitally interested, not pecuniarily, but rather by reason of its police powers, exercised in furtherance of public welfare, and especially that great phase of public welfare having to do with the commercial life and banking business incident thereto.

Any motion made in the district court subsequent to the final order creating the receivership, the effect of which would be to destroy or discharge the receivership, would be one in which the state, as plaintiff in the action, would be entitled to notice, because the object of the statute, in the first instance, and the object of the litigation in so far as the state was concerned, was primarily to prevent the insolvent institution from further proceeding to conduct an unsafe business, where the public might be the victim; and, secondly to see that the affairs

of the institution were wound up equitably to the end
that its creditors might receive just compensation so far
as the assets of the institution would go.

Let us assume that the court, in this case, had refused
to grant any compensation to the receiver and thereby
made it possible that no receiver would act. Would not
the state be interested in seeing that such an order
was modified to the extent that the object of the litiga-
tion might be carried out and a liquidation accomplished?
The matter of fixing the receiver's compensation being a
matter so incident and vital to the order creating the
receivership, and the state, being vitally interested in
the one, must of necessity be equally interested in the
other. The order appointing the receiver, as well as the
order fixing his compensation, are matters which go
directly to the primary object of the statute itself,
namely, the protection of the depositing public, and
especially the depositors of an insolvent banking institu-
tion. As already stated, the state was not interested
from the standpoint of being a depositor or creditor of
the insolvent institution, but its sole interest grew out
of its police power set in operation by the enactment of
1907.

The right of the state to exercise control and supervision
in matters of this character cannot, in the light of modern
thought and reasoning, be questioned. When the legisla-
ture, speaking for the policy of the state, enacts laws
which tend to protect the people in general, or great num-
bers of the people, when it seeks to enhance public wel-
fare by enacting laws tending to safeguard and promote
business and commercial conditions, the ultimate aim and
object of such laws should not be lost sight of. Enacted
and maintained by reason of the police powers of the
state, such laws should be operated and construed to the
end that their spirit might be applied, even though in
letter they may appear limited or defective.

The order fixing the receiver's compensation, like any
other order affecting the force of the original judgment
creating the receivership, was one in which the state,

the party plaintiff in the original action, was interested and being a party interested, and being the very party at whose instance and motion the receivership was established, was entitled to notice. Moreover, it was entitled to actual notice by proper service. (*Pratt* v. *Rice*, 7 Nev. 123; Daniels Chancery Pl. & Pr. 6th Am. ed. sec. 1591.)

The order fixing the receiver's compensation being one made on motion without notice to the state, the party interested in the final judgment, was void, and the state having moved within time to set aside the order, its motion should have been granted.

NORCROSS, J., dissenting:

I am unable to concur in the opinion and judgment of my associates in this case.

The prevailing opinion is based on the provisions of the act of the legislature of 1913. Upon the oral argument in this case, the attorney-general specifically disclaimed any authority under that act, and the act is not even referred to in the brief. While I think the attorney-general was clearly correct in his views that the state or the attorney-general derived no rights from the act of 1913, in so far as the orders under consideration are concerned, nevertheless respondent is entitled to be heard upon this question before it is made the basis of the court's decision, especially when the prevailing opinion holds against the contention upon which the attorney-general rested the case upon appeal. The act of 1913 does not in any of its provisions, as held in the prevailing opinion, authorize the attorney-general to intervene on behalf of the creditors. Whatever rights the attorney-general has under that act is as the representative of the state.

The prevailing opinion also holds that the notice to creditors was insufficient and void and, hence, that the orders in question were merely *ex parte* orders. No question was or could be raised on the appeal as to the sufficiency of the notice to creditors and stockholders, but it was virtually admitted that the notice as to them

was sufficient. Similar notices were admitted to be sufficient in the Esmeralda County cases recently decided. No person other than a creditor or a stockholder could question the sufficiency of the published notice as affecting their rights. In the absence of the sufficiency of these notices being so questioned, it is without the province of this court to consider the same. This is in accordance with an established rule that has no exception that I am aware of. The attorney-general could question the sufficiency of the published notices as giving legal notice to the state, if the state had an interest in the matter as contended, but that is as far as the attorney-general could go or has sought to go. If these orders were void because of the character of the published notices, then there must have been a great many void orders entered in the various bank receiverships pending in different district courts during the past seven years.

The third ground of the notice of motion to set aside the orders fixing the compensation of the receiver and his attorneys, quoted and referred to in the prevailing opinion, has no place in the case on appeal. The record does not show it was relied on in the court below, and it could not be relied on in this court upon the record as presented and was not relied on or even referred to in the briefs or oral argument.

The prevailing opinion says: "At the time the orders fixing the compensation were made there was no statute authorizing the attorney-general to oppose them nor providing that he should be served with notice of these motions." This statement is an adverse ruling upon the sole contention of the attorney-general made upon the hearing on appeal and is the only proposition of law in the prevailing opinion with which I concur.

The learned chief justice avoids the effect of this ruling by holding, contrary to the views of all the counsel in the case, that the act of 1913 authorized the attorney-general to appear in the receivership proceedings "on behalf of the creditors." The attorney-general did not appear on behalf of the creditors, but appeared on behalf

of the plaintiff—the state on the relation of the bank commissioners—in the original action, and he then claimed and still claims no right to appear in the proceedings except by virtue of the banking act of 1907, under which the action against the State Bank was instituted and the judgment entered.

It is asserted in the prevailing opinion that, notwithstanding the state had no further interests in the proceedings after final judgment of insolvency was entered under the act of 1907, nevertheless the state, under the police power, can again interfere in the winding-up proceedings, and that the act of 1913 was an exercise of such police power.  This reasoning, I think, is erroneous in at least two respects.  The act of 1913 is a special act which does not purport, in any way, to prescribe any regulations for banks which are going concerns or in the hands of a receiver.  It is not a police regulation.  It does not purport to create any new rights, but merely authorizes him to take any proceedings "he may deem necessary  *  *  * in the name of any proper party plaintiff or in the name of the State of Nevada."  It does not authorize the attorney-general to appear for any party, state or otherwise, having no beneficial interest in the matter, and, if it did, it would be void.  While the legislature unquestionably, under its police power, may enact laws regulating banks which include compulsory liquidation of insolvent or unsafe banks, and can prescribe the methods of such liquidation, it cannot, after one method has been established and a final judgment entered in pursuance of that method and the state's public interest determined by that judgment, enact other legislation enlarging the state's rights to interfere where only private rights are involved and where no public interest is affected.  Such an attempted exercise of power cannot be sustained on the theory of a police regulation.

The authorities referred to in the opinion of the chief justice only sustain regulations made prior to an adjudication of insolvency.  As well could it be said that the legislature could pass an act compelling all the now existing

state banks to contribute to the depositors of the State
Bank and Trust Company. In *State, ex rel. Howell,* v.
*Wildes,* 34 Nev. 94, 116 Pac. 595, we held that the legis-
lature was without power to change the force and effect
of a final judgment in the State Bank case by taking the
liquidation of the bank out of the hands of a receiver
appointed by virtue of·the act of 1907 and putting it in
the hands of the bank examiner under the provisions of
the banking act of 1907.

I am unable to see the force of the reasoning to be
found in the concurring opinion of my learned associate.
The law of receiverships is well settled. A receiver is
entitled to a reasonable compensation for his services to
be fixed by the court. If a court should refuse to fix any
compensation, there is a way open to compel it do so.
The intercession of the state could add nothing to the
power that exists in any·interested party to take appro-
priate action. If the court ordered too great or too little
compensation, ample remedy under the law now exists
and always has existed to correct such errors, which do
not rise to the dignity of requiring the exercise of the
police power of a state to remedy.

As assumed by the attorney-general and associate
counsel for appellant, this case is determined by the pro-
visions of the act of 1907, under which the judgment
appointing the receiver was entered, and, considered in
the light of that statute, the question involved on the
appeal is settled by numerous authorities.

This case was originally assigned to the writer of this
dissenting opinion, and shortly after its submission I
submitted to my associates a draft of an opinion which
I then believed and still believe is the law of this case.
With some immaterial modifications, what follows is the
draft of that opinion, which expresses my views:

The motion to dismiss upon the ground that the
state is neither an aggrieved nor adverse party raises a
question decisive both of the motion and the merits, for
if the appellant could not be considered an adverse party,
or could not have been aggrieved by the orders allowing

receiver's fees and the fees of the attorneys for the receiver, then appellant was not entitled to notice of the hearing of the application for such orders, had no appealable interest therein, and was without standing upon a motion to set the same aside. Rev. Laws, sec. 5327, provides: "Any party aggrieved may appeal in the cases prescribed in this title."

In the recent case of *Esmeralda County* v. *Wildes*, 36 Nev. 526, 137 Pac. 400, dismissing an appeal taken by the receiver of the State Bank and Trust Company from an order affecting only the rights of creditors as between themselves, McCarran, J., speaking for the court, said: "It must be observed that our statute prescribes that parties aggrieved may appeal. The word 'aggrieved' refers to a substantial grievance. The imposition of some injustice, or illegal obligation or burden, by a court, upon a party, or the denial to him of some equitable or legal right, would constitute a grievance in the contemplation of this statute.   *   *   *   Any creditor or any set of creditors of the insolvent bank might have appeared in the lower court pursuant to the notice given at the time of the hearing of this matter and resisted the making of the order, and it was within their power to prosecute an appeal to this court from such order; they being properly the parties aggrieved." See, also, 2 Cyc. 628, 631; 23 Cyc. 949; 15 Enc. Pl. & Prac. 249.

A vital question presented upon this appeal is: Has the state any beneficial interest in the orders sought to be set aside? If it has no such interest, it could not be an "aggrieved" party, and hence has no right of an appeal.

The banking act of 1907, under the provisions of section 10 thereof (Stats. 1907, p. 229), authorized the state, through its attorney-general, upon request of the state bank commissioners, to institute proceedings against a bank doing business under state laws, to obtain a decree ordering the bank into involuntary liquidation and appointing a receiver for such purpose of liquidation. If, upon the hearing, the court determined the bank

to be insolvent or in a condition rendering it unsafe to continue business, such a final judgment could be entered. It was this character of a judgment which was entered against the State Bank and Trust Company. (*State* v. *State Bank and Trust Co.*, 31 Nev. 463, 103 Pac. 407, 105 Pac. 567; *State, ex rel. Howell,* v. *Wildes*, 34 Nev. 94, 116 Pac. 595.) Such a proceeding is purely statutory, and the extent of the state's rights and powers in the premises is limited by the statutory proceedings. The right of the state to interfère at all in the proceedings of a bank is dependent upon its police power. The interest which the state had in instituting the suit and forcing the bank into involuntary liquidation was a public one growing out of its powers to regulate the banking business. (*Ex Parte Pittman*, 31 Nev. 43, 99 Pac. 700, 22 L. R. A. n. s. 266, 20 Ann. Cas. 1319; *State* v. *State Bank,* 31 Nev. 456, 103 Pac. 407, 105 Pac. 567; *State* v. *Wildes,* 34 Nev. 94, 116 Pac. 595; *Marymont* v. *Banking Board,* 33 Nev. 333; *Eureka Bank Cases*, 35 Nev. 80.)

The right of the state to institute a suit against a banking company for the purpose of forcing it into involuntary liquidation is a part of the state's plan of regulation. (*State* v. *State Bank, supra.*)

What was the subject-matter of the controversy in which the state was an interested party in the suit against the State Bank and Trust Company? Manifestly, whether the bank was insolvent or was in an unsafe condition and, for that reason, should be forced into involuntary liquidation. After it had obtained that judgment it had accomplished the only purpose which the statute authorized it to perform. The question of public interest in the bank was determined by the judgment. As to whom were entitled the assets of the bank, involved no public question. Process of liquidation then follows as a matter of course under established equitable rules governing receiverships. The creditors and stockholders were interested in the disposition of the assets in the hands of the receiver. Either singly or collectively, through depositors' organizations or otherwise, they had

a right to appear and object to any action of the receiver which they might deem injurious in their rights, and they had the right of appeal. The state was not their representative and could not bind them in matters growing out of the liquidation of the bank.

The cases holding that a party, in order to be entitled to have any affirmative relief in an action or to have the right of appeal, must have a beneficial interest are numerous and without conflict. The mere fact that a person is a necessary or proper party to an action does not signify that he is interested in every order that may be entered in the case or in every part of the judgment. A single judgment may determine the rights of several parties to a suit and each have no interest in portions of the judgment affecting the rights of others. (*Douglas* v. *Thompson,* 35 Nev. 196, 201.)

In the suit against the State Bank and Trust Company, the state was interested to the extent of having the bank decreed into involuntary liquidation and a receiver appointed to effectuate such liquidation. With the entry of the judgment, the state's public interest was fully accomplished. With the disposition of the assets, no public question was involved, nor is there statutory authority for further interference.

This precise question has been before the courts in a number of cases and the decisions are all to the same effect.

Hawley, J. speaking for the Circuit Court of Appeals, Ninth Circuit, in the case of *Murray* v. *American Surety Company,* 70 Fed. 341, held that a proceeding under the California banking act was a statutory proceeding and that the powers of the attorney-general and the court were limited by the provisions of the statute. After quoting extensively from the opinion in the case of *People's Home Savings Bank* v. *Superior Court,* 103 Cal. 27, the opinion contains the following excerpt:

"In *State Inv. & Ins. Co.* v. *Superior Court of San Francisco,* 101 Cal. 135, 149, 35 Pac. 549, the court, in discussing a similar question, said: 'The only parties to the

present action are the people of the state and the delinquent corporation. When the object for which the action is authorized—the revocation by the state of the franchise which it conferred—has been accomplished, there would naturally be no further action for the court to perform. The state has no interest in either the assets of the corporation or its debts; and, when it has secured the dissolution of the corporation, its functions in the action have ceased.'"

Harrison, J., speaking for the Supreme Court of California, in the State Investment and Insurance Company case, *supra,* further said: "The statute does not authorize either the attorney-general or the insurance commissioner to exercise any further direction or control in the affairs of the dissolved corporation, or in the distribution of its assets; nor has the state or any of its officers any interest in having the creditors receive from the assets of the corporation the amounts in which it may be indebted to them; and it is no concern of the state how or when the assets of the corporation shall be divided between the stockholders."

The banking act of California, involved in the earlier cases herein referred to or quoted from, provided a different method of liquidating a bank after it had been adjudged by a court to be in an unsafe or insolvent condition, and enjoined from continuing to do a banking business, than that prescribed under the Nevada banking act of 1907. These differences in method, however, do not affect the controlling question determined in those cases and applicable to the case at bar.

In *People's Home Savings Bank* v. *Superior Court,* 103 Cal. 32, Beatty, C. J., speaking for the court, said: "The attorney-general is authorized to proceed against the corporation alone, and for the sole purpose, in effect, of winding up its business. In other words, he represents the interest of the people in a matter of public concern. The state, which has granted to its creature the privilege of doing a banking business, by his intervention revokes that privilege for violation of the conditions, express and

implied, upon which it was granted. It does not pretend to constitute itself the guardian of merely private rights of individual stockholders or creditors of the corporation, and has not empowered the attorney-general in its name to maintain an action in their behalf against the directors of the corporation for violation of their trust, as has been attempted in this case. His function as agent of the state is, as above stated, simply and solely to revoke the privilege granted by the state, of doing a banking business, and, before the court can issue its injunction for that purpose, the corporation is entitled to a hearing and an opportunity to contest the allegations against it. * * * We see no reason, therefore, to enlarge, by construction, the provisions of a statute which was never designed to put the protection of private interests under the exclusive care of the state, and we are compelled to hold that the *ex parte* orders of the superior court above set out were unauthorized and void, and that further proceedings thereunder should be prohibited."

In *Murray* v. *American Surety Co.* (C. C.) 59 Fed. 348 (same case as 70 Fed. 341, 17 C. C. A. 138, *supra*), Ross, J., said: "The remedy pursued by the attorney-general in the name of the people of the state in the case of the savings bank in question being statutory only, the court that took jurisdiction for its enforcement was limited in its powers by the statute under which it acted. (*East Tennessee, V. & G. R. Co.* v. *Southern Tel. Co.*, 112 U. S. 306, 5 Sup. Ct. 168, 28 L. Ed. 746; *Windsor* v. *McVeigh*, 93 U. S. 274, 23 L. Ed. 914). It will be seen that the suit the attorney-general is by the statute authorized to commence is one 'to enjoin and prohibit the transaction of any further business by such corporation.' * * * That is the extent of the judgment authorized by the statute to be entered in the suit authorized by the attorney-general; that is to say, the enjoining of any further transaction of business by the insolvent corporation, and an order that the commissioners take such proceedings against such corporation as may be decided upon by its creditors."

In the case of *People* v. *Buffalo S. & T. Co.*, 131 N. Y. 144, 29 N. E. 948, 15 L. R. A. 240, the court said: "But an action to annul a corporation under article 4 is purely a public action and proceeds upon public grounds. * * * The simple question to be determined in such an action is whether the existence of the corporation shall be permitted to continue, and it in no way concerns the rights and interests of the persons interested in the corporation as between each other."

In the case of *De Forrest* v. *Coffey*, 154 Cal. 444, 449, 98 Pac. 27, 29, a case involving the receivership of the California Safe Deposit and Trust Company, under a later banking act than that involved in the California cases cited, *supra*, an act similar to our banking act of 1907, the court, by Lorigan, J., said: "There is nothing in the procedure with reference to special proceedings involving the liquidation of insolvent banking corporations, which limits or constrains the exercise of the ample legal and equitable powers of the superior court. * * * While the court in the special proceeding for liquidation takes charge of the assets of an insolvent bank and holds them through its officer, the receiver, it only does so to conserve the interests of those who are properly entitled to share in them. It assumes the administration of the entire estate; controls the conduct of the receiver, who is its officer, and whose possession of the assets is the possession of the court; it holds the property and administers the insolvent estate through the receiver in the interest and for the benefit of those who it may ultimately determine are entitled to it."

See, also, *State, ex rel. Goddard, Attorney-General*, v. *State Bank of Circleville*, 84 Kan. 366, 114 Pac. 381.

Counsel for appellant relies upon the mere fact that the state was a party to the original proceeding to force the bank into liquidation, as ground for claiming that it was entitled to written notice of the proceedings in question, but the foregoing authorities are a complete answer to this contention. No authorities supporting a contrary

rule are cited, nor have we been able to find such. It follows that the state, having no interest in the subject-matter of the orders, was not entitled to notice of the hearing of the applications upon which the orders were based, and has no appealable interest therein.

It is the contention of counsel for respondent that the published notice given of the applications for the orders in question were sufficient notice to the state, even conceding it entitled to notice. According to the brief of respondent, the creditors of the bank number over 4,000. It is manifest that personal notice could not be served upon such a vast body of creditors. It is not contended that the notice to creditors was insufficient, nor is that question involved upon this appeal. The question of whether the state would be entitled to any different character of notice, if entitled to any, is unnecessary to consider.

The State Bank and Trust Company and a number of other insolvent banks have been in course of liquidation in the courts of this state for a number of years, and, if it had been the practice to serve written notice upon the attorney-general of application for orders fixing receiver's compensation and the fees of attorneys for receivers, doubtless that fact would have been called to our attention. We understand it has not been the practice to make such service. This is of no importance except in that it shows the construction which the courts and attorneys have heretofore placed upon the law, a construction we think clearly correct.

No question was raised in the lower court or is involved upon this appeal relative to the amount of compensation of the receiver or the fees allowed his attorneys in the orders sought to be set aside upon the jurisdictional grounds heretofore stated. The case presents no question of merits but one of jurisdiction exclusively.

When these orders were under consideration, in pursuance of the published notice, an opportunity was open to any creditor, or stockholder, to contest the same

and to appeal from the orders if dissatisfied. (*Esmeralda County* v. *Wildes, supra.*)

We fully appreciate the importance of having the liquidation of insolvent banks proceed with the least possible delay consistent with a due regard to the condition of the banks' assets, and that excessive allowances for the expenses of administration should not be sanctioned. In the case of *State* v. *Wildes*, 34 Nev. 125, we made some pertinent observations upon this subject. What is a just allowance for the expenses of administration may involve a consideration of many questions. The law affords a means for the determination of these questions, where all parties interested may be heard. If any creditor or stockholder of the corporation deems himself aggrieved by the allowances made to the receiver, he has the same right of appeal that any interested party has in any litigation where private rights are involved. The decisions are legion where similar questions have been determined upon appeal by courts of last resort. Whatever may be the rights of the creditors and stockholders in matters affecting the liquidation of the affairs of the bank, it is clear, beyond question, that the state is without interest therein.

No compensation appears to have been allowed the receiver since August 1, 1912. The question is now before the court where any interested party may again have an opportunity to be heard.

For the reasons given, I think the appeals should be dismissed.

## ON PETITION FOR REHEARING

By the Court, TALBOT, C. J.:

After mature deliberation, the petitions for rehearing are denied.

[1] Whether in the states in which the old equity practice prevails, not regulated or superseded by statute, the court may in certain cases order service of notice by publication and fix the time therefor need not be determined. Under section 1 of our civil practice act, which

provides that "there shall be in this state but one form of civil action for the enforcement or protection of private rights, and the redress or prevention of private wrongs," it has long been recognized that the civil practice act controls in chancery proceedings.

[2] The provisions of section 425 of that act that "written notices and other papers, when required to be served on the party or an attorney, shall be served in the manner prescribed in the next three sections, when not otherwise provided," apply to equity cases. Also, we see no reason why district court rule No. 10, relating to the service of notice, and district court rule No. 45, providing that motions to vacate orders may be made within six months upon notice to the adverse party, should not so apply.

[3] As none of the creditors or stockholders of the defunct bank is a party to this appeal, it is unnecessary to determine whether the notice to them, as published by the order of the court, was insufficient because not in compliance with any provision of the statute or court rule. Anything said in this regard in the opinion may be considered merely as the dicta of the writer. The conclusive facts remain that the attorney-general, who represents the state, which is a party to the action and to the appeal, and which has an interest in the case as a matter of public policy, and, owing to the great importance that the banking business bears to the general welfare, was not served with notice of the applications for the orders; that therefore they were *ex parte,* so far as the state was concerned; and that, acting under special authorization from the legislature, and within six months after the making of the orders, and in compliance with the court rule, which in regard to a matter of practice has the force of a statute, he moved that they be vacated. Whether he was or was not entitled to notice previous to the time the orders fixing the salary of the receiver and the compensation of his attorneys were made does not affect the result of the appeals, for the state had such an interest in the case that it could

authorize him later to appear in the action and move to set aside the orders after they had been made. Regardless of whether any notice was required to be given any one before the court made them, as no notice was served on the attorney-general, we cannot consider them otherwise than as *ex parte* orders, which he should be allowed to move to set aside, so that the state may have her day in court. We need not determine whether, if he had appeared, or had been served with notice before the making of the orders, they would be final ones which could have been reviewed only upon direct appeal. As it is the satisfactory conclusion of a majority of the members of the court that the attorney-general was authorized to act on behalf of the state at the time he moved to vacate the orders, it is immaterial whether he was empowered to act at some previous time.

In the petition for rehearing it is said that it needs no authority, in addition to the decision of this court, to show that it is beyond the power of the legislature to enact any law which would vacate the conditions in an existing judgment. It is claimed that the legislative act of 1913, directing the attorney-general to act on behalf of the state in the State Bank and Trust Company case, is violative of the constitutional provision requiring uniform laws regulating the practice of courts. In answer to these contentions it is sufficient to say that this act does not attempt to regulate court practice or to vacate or modify the orders of the district court. Whether the attorney-general be considered as proceeding under the act of 1913, or under other authority as the attorney of the state in an action in which the state is a party, the practice under which he is proceeding, so far as it appertains to the courts, is a general one, which is regulated by the statutes and court rules applicable to other litigants under similar conditions.

If it be conceded that the state should be limited to the same powers in all actions concerning the liquidation of insolvent banks, it does not follow that the state or the attorney-general must pursue the same course in every

action of that nature.   He, as attorney for the state, may within his authority make such defenses or institute such proceedings as the circumstances may require and he may deem best, the same as attorneys for other litigants. The state is no more required to pursue the same course in the various actions in which it is interested than private individuals.   The procedure in this case is not different from what it would be in other similar cases in which the state is not interested.   The statute directing the attorney-general to act for the state in a particular case is not a law regulating the practice of courts.   Employment or authorization of counsel by the state or an individual litigant is not a matter coming within any constitutional provision requiring uniform laws.

Regardless of any difference of views of the members of this court as to whether the attorney-general was entitled to notice or was authorized to appear in opposition to these orders prior to the act of 1913, it is sufficient that after the passage of that act, directing him to take action, and at the time he proceeded, he was empowered to make the motions to set aside these *ex parte* orders. Whether he would have been so authorized if that act had not been passed is not a question vital to the determination of the appeals or requiring a concurrence of a majority of the court.

As after mature deliberation we feel constrained to adhere to these views, and that our conclusion would not be changed by a rehearing, the trouble of having one should be avoided.   The setting aside of the orders cannot result in any injustice.   The way is still open for a fuller hearing in the district court, for the presentation of evidence, and argument by respondent, as well as by the state, and the entry of such orders as may be just and proper.

McCARRAN, J.: I concur.

NORCROSS, J., dissenting:

The petition for a rehearing should be granted.   In the three several opinions heretofore filed by the three

members of this court, no two agreed upon any question of law presented in the case for consideration except that the opinions of the chief justice and the dissenting opinion of the senior justice were in accord upon the following proposition, stated in the opinion of the chief justice:

"At the time the orders fixing the compensation were made, there was no statute authorizing the attorney-general to oppose them nor providing that he should be served with notice of these motions."

This was the only question presented in the briefs or arguments upon the original hearing, and was by the opinion of the senior justice deemed conclusive of the case. While holding against the only contention made by the attorney-general, the chief justice in his opinion based a reversal upon the provisions of the act of 1913, notwithstanding the attorney-general disclaimed any authority under that act, and its provisions were not discussed in the briefs or oral argument.

The junior justice based his concurrence in the order of reversal exclusively on a contrary construction of the statute of 1907, than that taken by his two associates. The effect was a reversal of the order appealed from upon two opinions reaching the same conclusion from two totally antagonistic points of view.

The views expressed in the opinion of the chief justice, except in reference to the statute of 1907, quoted *supra*, were not concurred in by either associate, and yet the effect of such view, nonconcurred in, was to reverse the orders. The opinions heretofore filed present the novel situation of a majority of the court refusing to sustain the sole contention of the attorney-general, but that officer, nevertheless, gaining a reversal of the orders appealed from by reason of the fact that one member of the court held that a reversal should be had under the provisions of a statute, which the attorney-general specifically disclaimed gave him any authority.

The view expressed in the opinion of the chief justice as to the act of 1913 presents a number of very serious

questions, which had not been presented to the court at all. These questions are now presented for the first time on the petition for a rehearing, and it seems they are not to be considered or are not deemed of serious moment.

If it be the law of this case as held by two of the members of the court, that, under the statute of 1907, service upon the attorney-general was not required, and he was not authorized to appear and oppose the orders appealed from, and if, by any possible construction of the act of 1913, "An act to provide for an investigation of all matters pertaining to the affairs and receivership of the State Bank and Trust Company, and making an appropriation," authorization can be found for the attorney-general to appear in the action in the way he has appeared, then the question is presented as to whether this is not a special law "regulating the practice of courts of justice," contrary to the provisions of section 20 of article 4 of the state constitution. It is a serious question whether the legislature has power to pass a special act authorizing the attorney-general to appear in a specific case, and does not authorize similar appearance in all cases of the same character.

There is another situation disclosed by the three opinions heretofore filed, and that is the total lack of any agreement as to the law governing the notice that should be given before making orders such as those sought to be set aside. The chief justice and senior justice held that, under the law of 1907, notice was not required to be served on the attorney-general. The junior justice held to the contrary. The chief justice, however, held that notice should have been served on the creditors and stockholders, and that the published notice was insufficient. The senior justice agreed with the chief justice, and it was so admitted by counsel, that notice should be served on the creditors and stockholders, but held that the attorney-general could not question the sufficiency of notice to parties whom he did not claim to represent, and it was pointed out that it was virtually admitted by all

parties that notice to creditors and stockholders was sufficient. It thus appears upon the question of notice, which not only affected the validity of the orders in question but also the validity of every order entered in every bank case in course of liquidation, there was no agreement whatever as to what the law is.

In *State* v. *Woodbury*, 17 Nev. 353, 30 Pac. 1006, Hawley, C. J., speaking for the court, said: "New trials or rehearings should not be granted simply for the purpose of having a reargument, unless there is a reasonable probability that the court may have arrived at an erroneous conclusion, or overlooked some important question, which was necessary to be discussed in order to arrive at a full and proper understanding of the case."

Here we have the court, dealing with grave questions of law affecting the validity of many orders in several different bank cases, arriving at ultimate results upon totally variant views of the law. If this situation does not present a case demanding a rehearing, I am at a loss to know when such a case would be presented.

If the foregoing reasons are not sufficiently cogent to justify a rehearing, then I think any deficiency therein is furnished by the opinion of my learned associates denying the petition. It is stated in this latter opinion that: "It is unnecessary to determine whether the notice to them (creditors and stockholders), as published by the order of the court, was insufficient because not in compliance with any provision of the statute or court rule. Anything said in this regard in the opinion may be considered merely as the dicta of the writer."

Conceding, for the purposes of the argument, that what the learned chief justice said in his decision as to service upon creditors and stockholders was mere dicta, we at least have concurrence by all members of the court that the sufficiency of notice to creditors and stockholders is not in this case. When this proposition is conceded, we may be permitted to revert to the former opinions wherein the majority of the court held that, at the time

the orders were entered, no notice was required to be served on the attorney-general.

It thus becomes necessary, if the order of reversal is to stand, to base it upon some new theory of law, and this, if I understand correctly the opinion denying a rehearing, is what we find. While it is entirely proper for the court to change its viewpoints on questions of law, I think the safer and better practice is to grant a rehearing before doing so.

If I read the opinion correctly, the following excerpt from the opinion may be taken as the final conclusion of the majority of the court as to what the law of this case is: "The conclusive facts remain that the attorney-general, who represents the state, which is a party to the action and to the appeal, and which has an interest in the case as a matter of public policy, and owing to the great importance that the banking business bears to the general welfare, was not served with notice of the applications for the orders; that therefore they were *ex parte*, so far as the state was concerned; and that, acting under special direction from the legislature, * * * he moved that they be vacated."

This statement might be regarded as a valuable contribution to the *corpus juris*, were it not for the fact that it is in direct conflict with the views formerly expressed by a majority of the court and in direct conflict with all of the authorities that have considered the question, cited and quoted from in the former dissenting opinion, and is based on an utterly false premise.

To now say for the first time, in the light of all the law upon the subject to the contrary, that the state, after the judgment entered, "has an interest in the case as a matter of public policy," such as permits the legislature at any time to intervene after its public interest has been determined by final judgment, presents such a new and radical view of law as would at least, in my opinion, justify a rehearing and the aid of argument of counsel before adoption. The opinion of the junior justice, in the

former consideration of this case, presented a clean-cut proposition of law upon which these orders could be reversed, if they could be reversed at all, to wit: That the statute of 1907 gave the attorney-general a continuing authority to act for the state, which was a party, not only for the purposes specifically prescribed in the statute, but for all purposes.    If my learned associates had both agreed upon this construction of the statute of 1907, while I would have disagreed with them as to such construction, we would have a definite proposition of law upon which to base the action of this court.    The public policy of a state must be determined from its legislative enactments, not from any conceptions of what a court may think it ought to be.    It may be readily conceded that these orders were *ex parte* so far as the state was concerned.    They were also *ex parte* so far as many other persons were concerned.    That, however, is immaterial, unless they were *ex parte* so far as a party or person beneficially interested is concerned.    If the state was not beneficially interested in the matter before the act of 1913, the legislature could not create such an interest, and it did not attempt to.

In the State Bank case of *Esmeralda County* v. *Wildes*, 36 Nev. 541, 137 Pac. 405, this court, speaking through McCarran, J., said: "Any creditor, or any set of creditors, of the insolvent bank might have appeared in the lower court pursuant to the notice given at the time of the hearing of this matter and resisted the making of the order, and it was within their power to prosecute an appeal to this court from such an order; they being properly the parties aggrieved.    *  *.  *    The seriousness and importance of the result of dismissing an appeal in cases of this general character causes us rather to reflect on the absence of a law which would provide for a better protection for the creditors and their respective interests. *  *  *  It appears to us regrettable that some power is not vested in the court appointing a receiver, in a case of this kind, whereby at the very time of the appointment of the receiver, or on occasions when the court

might deem it essential, it might appoint some agent, either selected by the creditors or by the court, whose duty it would be solely to represent the creditors separate and apart from the receiver, and who might be empowered, by reason of his representative capacity, to prosecute an appeal so that the sanction or guidance of the court of last resort might be afforded not only to the receiver, as the representative of the estate, but also to the court appointing him."

It did not occur to any member of this court, at the time this latter decision was rendered, that the state had any interest, based on public policy or otherwise, that would authorize or require the attorney-general to appear on behalf of the creditors and stockholders.

While no showing or contention has been made in this court that the fees allowed the receiver and his counsel have been excessive, if we were permitted to assume from matters *dehors* the record that it is the ultimate object of the attorney-general to attack the amount of such allowances as excessive, I think it would be better to have advised the attorney-general that he would doubtless find no difficulty, among the 4,000 creditors of the defunct bank, in finding one or more who would have permitted the use of their names in a proceeding to set aside the orders upon a showing of merits. This would have been consistent with the provision of the statute of 1913, which by its very enactment was a legislative recognition of the fact that the state had no further interest in the case by virtue of the statute of 1907, which did not even prescribe that the receivership suit should be instituted in the name of the state (Stats. 1907, p. 232), and which statute has long since been superseded.

Courts sometimes feel justified in bending the law to prevent an injustice, and from this has grown the familiar expression, "hard cases make bad precedents." Assuming from matters *dehors* the record, which we are not authorized to do, that excessive fees are claimed to have been allowed in this case, it was within the power of the creditors or stockholders of the defunct bank to

have moved, upon a showing of merits, to set them aside. Even if it could be said, which may be doubtful as this is an equity case, that it is now too late for creditors to be heard as to these former orders, nevertheless they can now be heard as to compensation since those orders have been made, and, if the former orders were excessive, that can be taken into consideration in making subsequent orders. The statute of 1913 authorized the attorney-general to appear in the state bank matter "in the name of any proper party." He could unquestionably have appeared in behalf of a creditor, with the latter's consent. Where I differ with my associates is in the holding that the attorney-general could have opposed the orders here in question in any other capacity than that as a representative of a creditor or stockholder. If exorbitant fees have been allowed, they should, if possible, be corrected. I am not convinced that the long-established and well-recognized remedies are not sufficient to correct any erroneous judgment that may have been entered in the proceedings. I still believe they are amply sufficient.

The attorney-general, in my judgment, should have proceeded in the name of a creditor or stockholder of the bank, which he could then and can now do upon consent, which ought not be difficult to obtain. He could not further appear in the name of the state, which has no beneficial interest in the case beyond that specified in the statute, securing a decree of involuntary liquidation and the appointment of a receiver, which terminated the state's public interest.

I prefer to see a rehearing in this case rather than to see established, without a grave necessity therefor, what I believe is a dangerous precedent, in view of the many other orders that have been entered in the several bank cases.